**B.N.E., SWEDBANK, S.A. (formerly Banque Nordeurope, S.A.), Plaintiff,**

**v.**

**Pravin BANKER, Huguette Banker (also known as Hugette Pestel, H. Pestle and Huguette Gilberg Banker), Pravin Banker Associates, Ltd., Prabank Capital Limited and Global Financial Group, Ltd., Defendants.**

**No. 89 Civ. 7322 (RWS).**

United States District Court, S.D. New York.

April 27, 1992.

On Motion for Leave to Reargue June 2, 1992.

OPINION

SWEET, District Judge.

Defendants, Pravin Banker ("Banker"), Huguette Banker a/k/a Huguette Pestel ("Pestel"), Pravin Banker Associates, Ltd. ("Pravin Banker Associates"), Prabank Capital Ltd. ("Prabank"), and Global Financial Group, Ltd. ("Global"), have all moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting them summary judgment and dismissing Plaintiff B.N.E., Swedbank, S.A.'s ("B.N.E.") amended complaint against them. BNE has also moved for summary judgment against the Defendants with respect to the first count of the amended complaint. For the reasons set forth below, the Defendants' motion is granted in part and denied in part. B.N.E.'s motion is denied.

*The Parties*

B.N.E. is a banking corporation incorporated under the laws of the Grand Duchy of Luxembourg. It was formerly known as Banque Nordeurope S.A. and is a wholly-owned subsidiary of Swedbank S.A.

Banker is a resident of the State of Connecticut and a native of Sri Lanka. He is a 50% stockholder of Pravin Banker Associates and a 50% shareholder of Global.

Pestel is Banker's wife. She is a resident of the State of Connecticut and a French national. Pestel owns the other 50% of Pravin Banker Associates and Global.

Pravin Banker Associates is a Delaware corporation, with its principal place of business at 305 Madison Avenue in New York City.

Global is a Cayman Islands corporation, with its principal place of business at 305 Madison Avenue in New York City.

Prabank is a Delaware corporation, with its principal place of business at 305 Madison Avenue.

*Facts*

The underlying dispute is based on a series of telephone calls and telexes in 1987 through which B.N.E. attempted to sell LDC debt. "LDC debt" is an industry term for debt instruments issued by gov-

McPheters & Richardson, P.C., New York City (R. Douglas McPheters, of counsel), for plaintiff.

Winthrop, Stimson, Putnam & Roberts, New York City (John F. Pritchard, Adam I. Stein, of counsel), for defendants.

ernmental entities in "lesser-developed countries".

B.N.E. alleges that it entered into a contract with Global on May 7, 1987, in which Global agreed to purchase US$6.67 million (face value) of United Mexican States debt instruments held by B.N.E. On July 31, 1987, the purchase of US$2 million of this debt apparently was completed. Global and Banker allegedly have refused to purchase the balance of this debt.

The parties also allegedly entered into a contract in which Global agreed to purchase US$4 million (face value) of debt instruments issued by the Industrial Bank of Venezuela. The Defendants allegedly failed to honor this contract as well.

B.N.E. additionally alleges in the Amended Complaint that Banker and Pestel fraudulently induced it into entering into these contracts and that they never intended to consummate either deal. The complaint also adds a RICO claim for good measure.

*Prior Proceedings*

At the time B.N.E. filed this action, it also filed an action against Banker in the United States District Court for the District of Connecticut styled *Banque Nordeurope v. Banker*, No. B–89–620 (the "Connecticut Action"). The purpose of the Connecticut action was to obtain an attachment of Banker's home in Connecticut on the theory that Banker was personally liable to B.N.E. Banker is the sole defendant to that action, and the parties have stipulated that it will be transferred to the Southern District of New York and consolidated with this action once the attachment issue is resolved.

In the Connecticut action, B.N.E. secured an *ex parte* attachment pursuant to Connecticut's prejudgment remedy statute. Conn.Gen.Stat. § 52–278e. That statute did allow an attachment to issue upon the verification by oath of the plaintiff that there is probable cause to sustain the validity of the plaintiff's claim. Subsequent to the attachment, the Second Circuit and the Supreme Court both declared this provision

of the statute unconstitutional for failing to require a hearing absent exigent circumstances. *See Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); *Pinsky v. Duncan,* 898 F.2d 852, 856 (2d Cir.), *amended,* 907 F.2d 17 (1990).

Banker moved to dissolve the attachment on the ground that the claims against him were not supported by probable cause. The Connecticut District Court referred the motion to a Magistrate Judge on January 18, 1990, without B.N.E.'s consent. The order of reference stated that the matter was referred "for the purpose of hearing and ruling on the motions to dissolve and stay".

The Magistrate Judge conducted a probable cause hearing, at which witnesses testified on behalf of both parties. On October 15, 1990, the Magistrate Judge issued an opinion ("Opinion") granting Banker's motion to dissolve the attachment. For purposes of her ruling, the Magistrate Judge assumed that a valid contract had been formed. *Opinion,* slip op. at 24–25. She then proceeded to find that: (1) "[t]he documents themselves belie any argument that Global Financial intended to enter into these contracts as a principal rather than as an agent," *id.* at 25; (2) there was "no basis for BNE's argument that it was dealing with Banker individually and not his corporations," *id.;* (3) there was "no basis for 'piercing the corporate veil' now," *id.* at 26; and (4) there was no evidence of fraudulent conduct by Banker, *id.* at 27. The Magistrate Judge therefore held that "BNE failed to establish probable cause to sustain the validity of its claims against Banker individually". *Id.* at 28.[1]

The District Court approved, affirmed, and adopted the Opinion on November 20, 1991, over B.N.E.'s objection. B.N.E. has since appealed this order to the United States Court of Appeals for the Second Circuit.

Additional discovery took place after the attachment hearing. The parties deposed

---

1. B.N.E. had also filed a motion to amend its complaint in the Connecticut Action to add Pestel as a party and attach her interest in the residence. This motion was denied in the Opinion as well. *See id.* at 28.

Reiner Jahn, a former employee of B.N.E. who took part in the transactions at issue, and Claude Heroys, a employee of the International Mexican Bank Ltd., and conducted further document discovery. The document discovery tended to establish that Banker paid for many personal expenses with corporate funds. As a result, the parties have entered into a stipulation that effectively removes the corporate veil issue from the case. *See* McPheters Affidavit ¶ 9; Stipulation and Order ¶¶ 5, 9 (Sept. 11, 1991).

The Defendants filed their motion on January 22, 1992. B.N.E. responded and filed its motion on February 17, 1992. Oral argument was heard on February 27, and submissions received through March 5, 1992.

*Discussion*

### I. *Collateral Estoppel*

The Defendants suggest that their "motion is quite simple and rests on the uncontestable fact that having had—and taken advantage of—a full and fair opportunity to litigate its predicate breach of contract claim and having had that claim rejected *in toto*, ... BNE is collaterally estopped from relitigating that issue here." Defendants' Reply Memorandum 2–3.

The short answer is that the Defendants' argument is simply untenable given that the Magistrate Judge assumed that a valid contract had been formed for purposes of her ruling. *See* Opinion 24–25. There is no evidence in the record suggesting otherwise. The long answer is that the use of collateral estoppel to bar litigation of the contract issues would be improper.

Preclusion rules are expressed through the doctrines of *res judicata*, or "claim preclusion," and collateral estoppel, or "issue preclusion". *Res judicata* precludes a party, or those in privity with the party, from relitigating claims that were or could have been raised in a prior action that is final on the merits. *See Fay v. South Colonie Central School District*, 802 F.2d

21, 28 (2d Cir.1986). Although both parties hint at elements of *res judicata* in their arguments, the doctrine is inapplicable to the present situation. Instead, the Defendants invoke collateral estoppel, which generally precludes relitigation of issues identical to those raised and necessarily decided in a prior proceeding.

### A. *Federal Preclusion Rules Apply*

The Opinion was rendered by a federal district court sitting in diversity in Connecticut. Contrary to the parties' assumption, New York law does not control the collateral estoppel issue and it is not entirely clear that federal law should control. If the attachment proceeding was brought in a Connecticut state court, this Court would have to give that proceeding the same preclusive effect a Connecticut state court would have given it. *See, e.g., Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Golino v. City of New Haven*, 950 F.2d 864, 869 (2d Cir.1991); *Don King Productions, Inc. v. Douglas*, 742 F.Supp. 741, 750 (S.D.N.Y. 1990). However, the law of the Second Circuit is unclear as to which forum's preclusion law should be applied by a federal court sitting in diversity examining the proceedings of another federal diversity action. *See Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Johnson v. Eli Lilly & Co.*, 689 F.Supp. 170, 172 (W.D.N.Y.1988); *see also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4472.[2]

In *Gelb*, the Second Circuit declined to decide this choice of law issue, but did express a strong preference for federal preclusion rules: "It would seem that federal courts must possess an equivalent power and that federal law should determine the preclusive effect of a federal judgment, without regard to the basis of jurisdiction." *Gelb*, 798 F.2d at 42 n. 3

---

**2.** There is a split in authority among the other circuits. *See generally Johnson*, 689 F.Supp. at 172.

(citing *Restatement (Second) of Judgments* § 87 (1982) and Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741 (1976)). Therefore, to the extent that there is a difference between federal and Connecticut preclusion laws, this Court will apply federal law. *Hoppe v. G.D. Searle & Co.,* 779 F.Supp. 1425, 1426 (S.D.N.Y.1991); *Carlin v. Gold Hawk Joint Venture,* 778 F.Supp. 686, 690 (S.D.N.Y.1991); *Phoenix Canada Oil Co. v. Texaco Inc.,* 749 F.Supp. 525, 533 n. 12 (S.D.N.Y.1990); *Johnson,* 689 F.Supp. at 173. *Contra In re New York Asbestos Litigation,* 738 F.Supp. 66, 68 (E.D.N.Y. 1990).[3]

> For collateral estoppel to apply, (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb,* 798 F.2d at 44. These rules should not be applied mechanically, however, to protect against unfairness. *See Hoppe,* 779 F.Supp. at 1427; *cf. Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Finally, due process prohibits the operation of preclusion against a party who was not present or privy to a prior proceeding. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).[4]

**B.** *The Prior Decision was Practically Final*

■ As noted in *Don King Productions,* there are exceptions to the finality require-

ment. Typically this occurs "where a ruling is rendered 'practically' final owing to factors demonstrating 'that it was not avowedly tentative, the adequacy of the hearing, and the opportunity for review'". *Don King Productions,* 742 F.Supp. at 754 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)).

Under Connecticut law, an attachment proceeding is "limited to a determination of whether or not there is probable cause to sustain the validity of plaintiff's claim". Conn.Gen.Stat. § 52–278d(a). Such a proceeding is interlocutory, and not a final determination on the merits. It is considered final for the purposes of appeal in Connecticut. *Id.* § 52–278*l*(a).

Here, B.N.E. chose to bring the satellite action in Connecticut solely to obtain the attachment. After the Supreme Court ruled the ex parte component of Connecticut's attachment provision unconstitutional, B.N.E. sought to continue the stay.[5] The Magistrate Judge conducted a full hearing that lasted three days. Testimony was heard from witnesses, and cross-examination conducted. Both sides fully briefed the pertinent issue to the Magistrate Judge and the District Court. Under the unusual circumstances presented here, the prior determination may be considered "practically" final for purposes of collateral estoppel. *See Miller Brewing Co. v. Joseph Schlitz Brewing Co.,* 605 F.2d 990, 995–96 (7th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *Lummus Co.,* 297 F.2d at 89.

**C.** *The Contract Issues Were not Necessary to the Prior Decision*

■ The reference to the Magistrate Judge was for the limited purpose of deter-

---

**3.** For this reason, the Court has not considered the New York authorities discussed in both parties' briefs.

**4.** In Connecticut, "[f]or an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." *Aetna Casualty & Surety Co. v. Jones,* 220 Conn. 285, 296, 596 A.2d 414, 421 (1991). That the prior judgment be final for collateral estoppel to

apply does not appear to be a requirement. *See Dinnis v. Roberts,* No. CV 90–296974, 1992 WL 11190, 1992 Conn.Super. LEXIS 124 (Conn.Super.Ct. Jan. 15, 1992). Connecticut courts also do not draw a distinction between offensive and defensive collateral estoppel. *See Aetna Casualty,* 220 Conn. at 303 n. 19, 596 A.2d at 424 n. 19.

**5.** B.N.E. did not consent to the reference to the magistrate judge.

mining whether the attachment on Banker's residence should be lifted. This required determining whether there existed probable cause to believe Banker was personally liable for any damages suffered by B.N.E. The other Defendants were not parties to that proceeding.

The Magistrate Judge stated four grounds for dissolving the attachment: (1) that Global Financial intended to enter into these contracts as a principal rather than as an agent; (2) that B.N.E. was on notice that it was dealing with a corporate entity, not Banker; (3) that there was no basis for piercing the corporate veil; and (4) that there was insufficient evidence of fraud. Relying on case law holding that, where a court states multiple grounds for its decision, the parties may be collaterally estopped from relitigating each of those grounds, the Defendants seek to bar B.N.E. from litigating the viability and terms of the underlying contracts. *See, e.g., Winters v. Lavine,* 574 F.2d 46, 67 (2d Cir.1978).

■ If, however, an issue is not necessary to a prior holding, relitigation of the issue is not barred in a subsequent proceeding. *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *In re PCH Associates,* 949 F.2d 585, 593 (2d Cir.1991); *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992); *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir.1989). As to the contract issue, that plainly was not necessary to the Magistrate Judge's determination. First, it was assumed that a valid contract had been formed. Second, it appears that the Magistrate Judge only focused on a limited set of documents concerning only one of the two transactions at issue. Third, whether *Global* intended to enter into these contracts as a principal or an agent is immaterial as to whether Banker may have been personally liable for any breach of that assumed valid contract as a principal or an agent.[6] The Defendants therefore cannot avail themselves of collateral estoppel to bar relitigating the contract issues. *See In re PCH Associates,* 949 F.2d at 593; *Jim Beam,* 937 F.2d at 735.

The stipulation between the parties concerning any evidence that may be introduced at trial concerning commingling of funds by Banker essentially removes the Magistrate Judge's second and third findings from the case. *See* Stipulation and Order ¶ 9 (Sept. 11, 1991). The Court therefore declines to determine the collateral effect of these findings.

■ The Magistrate Judge's fourth finding was necessary to her holding. Although arguably an alternative holding, it was necessary for the Magistrate Judge to find that Banker personally did not fraudulently induce B.N.E. to enter into the transactions to dissolve the order of attachment. Further, the Magistrate Judge assumed for purposes of the hearing that the complaint before her had been amended to add Pestel, and presumably determined that she played no role in any alleged fraud. *Cf. Opinion,* slip op. at 27 n. 31. The fraud issue is identical to both proceedings, and it appears that the matter was fully and fairly litigated. B.N.E. is therefore collaterally estopped from litigating the fraud issue, *see Gelb,* 798 F.2d at 44, and the Defendants entitled to summary judgment on Count III of the amended complaint.

The Defendants rely chiefly on the collateral estoppel arguments in making their

---

**6.** Given the record before the magistrate judge, the question of whether the documents concerning the *Mexican* transaction created a principal or agency relationship seems to have been, at best, a question of fact. The magistrate judge relied on telexes sent weeks after the initial confirmation and did not have the testimony of Reinher Jahn before her. *Cf. Intershoe, Inc. v. Bankers Trust Co.,* 77 N.Y.2d 517, 569 N.Y.S.2d 333, 571 N.E.2d 641 (1991).

Moreover, it seems doubtful that the finding concerning Global was fully and fairly litigated. Global was not a party to the action, and whether it entered into a contract presumably is beyond the initial scope of the reference. Further, discovery conducted since these proceedings may shine a different light on that determination, and it would be unfair to bar full litigation of the issue absent this additional evidence. *See Blonder–Tongue,* 402 U.S. at 329–30, 91 S.Ct. at 1443.

motion for summary judgment. Because litigation of the contract issues is not precluded, the remainder of their motion for summary judgment is denied. Leave is granted to renew their motion for summary judgment on other grounds.

## II. *B.N.E.'s Cross–Motion*

█ B.N.E. has cross-moved for summary judgment on the first count of the amended complaint. This motion is primarily sought through the operation of Rule 36 of the Federal Rules of Civil Procedure based on a Request to Admit served on the Defendants October 4, 1991.

The Defendants untimely served their response on B.N.E. on January 15, 1992. The Court, however, allowed the response to be served, resulting in the requests not being deemed admitted. *See* Fed.R.Civ.P. 36(a). It therefore would be inappropriate to address the merits of B.N.E.'s motion for summary judgment on the present record. Leave is granted to renew this motion as well on a more fully developed record.

## Conclusion

To summarize, B.N.E. is precluded from relitigating the issue of fraud in the inducement, and not from litigating the contract issues. The Defendants' motion for summary judgment is granted with respect to the third count of the amended complaint, and denied in all other respects. B.N.E.'s motion for summary judgment is denied. Leave is granted to all of the parties to renew their motions for summary judgment on other grounds.

It is so ordered.

## ON MOTION FOR LEAVE TO REARGUE

The Plaintiff has moved for leave to reargue the Court's prior opinion in this matter dated April 27, 1992 (the "Opinion"), pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Rule 3(j) of the Civil Rules of the Southern District of New York. For the reasons set forth below, the motion is denied.

█ To be entitled to reargument under Local Rule 3(j), the Plaintiff must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm, Inc. v. American Horse Shows Association,* 624 F.Supp. 856, 857 (S.D.N.Y.1985).

Plaintiff seeks to reargue the collateral estoppel effect given by the Opinion to some of the issues decided in the companion Connecticut action. Plaintiff fails, however, to direct the Court's attention to any controlling decisions or factual matters that were overlooked. The proffered argument based on Connecticut law is not a proper basis for reargument. The Opinion stated that "to the extent that there is a difference between federal and Connecticut preclusion laws, this Court will apply federal law," Op. at 1006, and Plaintiff has failed to cite any controlling authority to the contrary that was not considered. The jury trial argument was previously presented to and fully considered by the Court. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 333–37, 99 S.Ct. 645, 652–55, 58 L.Ed.2d 552 (1979).

## Conclusion

For the reasons set forth above, the Plaintiff's motion for leave to reargue is denied.

It is so ordered.