**PRUDENTIAL SECURITIES INCORPORATED,**
Petitioner,

v.

**Mohammad Afzal ARAIN,**
**et al., Respondents.**

**No. 96 Civ. 2418 (LAK).**

United States District Court,
S.D. New York.

July 9, 1996.

As Corrected July 12, 1996.

Anthony Paduano, Jordan D. Becker, Smith Campbell & Paduano, New York City, for Petitioner.

Seth E. Lipner, Deutsch & Lipner, Garden City, NY, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case, which arises out of the widely publicized difficulties of Prudential Securities Incorporated ("Prudential"), involves the so-called "AMEX window." This provision of the constitution of the American Stock Exchange ("ASE") gives a customer the right to arbitrate claims against an ASE member firm before the American Arbitration Association ("AAA") in the City of New York unless the customer has signed an agreement requiring submission of the controversy to arbitration before the ASE.

Prudential's difficulties have grown out of its sales of interests in limited partnerships. Its troubles seem to have spawned an industry of which this controversy is a part. On November 29, 1995, Ron Miller, a non-attorney, filed a Statement of Claim against Prudential and a Demand for Arbitration with the American Arbitration Association ("AAA") on behalf of 147 claimants from 24 different states. He seeks to proceed with a consolidated arbitration in California. Prudential's petition in this Court contends that 64 of the arbitration claimants have no written arbitration agreements with Prudential, that their only basis for arbitration is the AMEX window, and that the AMEX window requires that any AAA arbitration be in the City of New York. It seeks a determination that those 64 claimants may pursue the AAA arbitration against Prudential only in New York. It contends also that the respondents' claims are untimely.

### Facts
#### The California Proceedings

The 147 claimants in the AAA sought a single, consolidated arbitration in San Francisco. The express policies of the AAA do not permit it to accept consolidated cases involving parties who are not signatories to the same arbitration agreement unless there is (1) an agreement of all the parties, (2) a court order directing consolidation, or (3) clear case law authorizing arbitrators to rule on consolidation issues. None of these exceptions was satisfied in this case. In consequence, the AAA ultimately ruled that it would not accept the arbitration on a consolidated basis. (Zagon Aff. ¶ 3) But the claimants did not even await the AAA's ruling before resorting to the courts.

On January 4, 1996, about half of the 147 claimants filed an action in the California Superior Court, City and County of San Francisco, to compel Prudential to arbitrate and to consolidate the arbitration of all of the claims. On February 16, 1996, Prudential moved to dismiss the action, insofar as it was brought on behalf of persons who neither resided nor maintained accounts at Prudential branches in California, on the ground of *forum non conveniens.* (*Id.* ¶ 6) On March

18, 1996, the California court granted the motion and stayed the action insofar as it was brought by non-California plaintiffs.[1] (Ferentz Aff.Ex. C)

Nor has the matter progressed with regard to the California plaintiffs. Under California law, a party seeking to compel arbitration may bring the matter to issue only by filing a noticed motion with the court. CAL. CODE CIV.PROC. § 1290.2 (West 1996). The claimants have not made such a motion in the six months during which the action has been pending.

Accordingly, the current state of play in California is that the AAA has refused to accept the consolidated claim. The court has declined to entertain the effort of the non-California claimants to compel a consolidated arbitration. The California claimants have filed an action to compel such an arbitration, but have not brought that matter to resolution.

*The AMEX Window*

Prudential's effort to stay respondents from pursuing the California arbitration pursuant to the so-called "AMEX window" has spawned a dispute concerning which of the respondents in this action are proceeding pursuant to the AMEX window and which have other rights to arbitrate. Article VIII, § 2, of the Constitution of the ASE, the AMEX window, provides that:

"Arbitration shall be conducted under the arbitration procedures of the Exchange, except as follows:

\* \* \* \* \* \*

"(c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association *in the City of New York,* unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange." (Emphasis added)

Prudential alleged in its petition that 62 of the 64 respondents do not have written arbitration agreements with it and therefore may arbitrate their claims against Prudential only before the AAA and only in New York. (Pet. ¶ 54) It there acknowledged that two of the respondents executed a customer agreement with Prudential authorizing arbitration in accordance with the rules of the ASE. (*Id.* ¶ 55) As will appear, subsequent investigation has resulted in some change in these figures.

The Second Circuit has held that arbitrations brought pursuant to the AMEX window must take place in New York.[2] Respondents therefore argue that certain of the respondents had written arbitration agreements with Prudential that permit arbitration before the AAA without restriction as to venue. In doing so, however, they have not produced a single such agreement. Nor have they come forward with a single affidavit of a single respondent asserting that the respondent executed such an agreement. Instead, they rely on an affidavit of Michael Hume, a former stock broker now employed by Mr. Miller's firm. On the basis of a review of some account documents and an outdated schedule of forms allegedly required by Prudential for the opening of certain types of accounts, Miller—who never worked for Prudential and professes no personal knowledge of Prudential's practices—opines that certain of the respondents, in the normal course of Prudential's business, would have been required to execute arbitration agreements of the sort alleged.

Prudential has responded with an affidavit of Regina Tait, a senior legal assistant whose duties include retrieving customer account documentation for use in litigation. Ms. Tait states that Prudential has no customer agreements for 46 of the respondents (and no evidence that seven of them even had accounts at Prudential or that six others had any interest in accounts owned by relatives who are claimants), that customer agree-

1. Although the order formally stayed the action of the non-California plaintiffs rather than dismissing it, it seems clear that the California court has no intention ever of hearing their claims. The parties have argued this matter on that assumption.

2. *Bear, Stearns & Co. v. Bennett,* 938 F.2d 31 (2d Cir.1991); *PaineWebber, Inc. v. Rutherford,* 903 F.2d 106 (2d Cir.1990).

ments of two others contain no arbitration clauses, that agreements with seven limit arbitration to the New York Stock Exchange and the NASD (thus excluding the AAA altogether), and that one of the respondents appears to have made his disputed investment via an account for which there was no arbitration clause, but had another account that provided for arbitration, albeit not before the AAA. (Tait Aff. ¶¶ 4–8) Prudential acknowledges that it recently has found agreements with eight other respondents that permit arbitration before the AAA without limitation as to venue (*id.* ¶ 9) and has dismissed as against them by stipulation.

Prudential has submitted also evidence inconsistent with the assumptions on which Mr. Hume's comments rest. Mr. Hume based his remarks on the premise that the account forms he reviewed exemplified all of the forms used by Prudential during the relevant period, a premise essential to his conclusion that the forms he supposed that the respondents signed would have permitted AAA arbitration without limitation on venue. That premise is incorrect, as Prudential also used other forms, that would preclude use of the AMEX window, during the relevant period. (*Id.* ¶ 11) Moreover, Prudential has shown that it simply did not obtain signed arbitration agreements from many of its customers. (*Id.* ¶ 10)

### Discussion

Arbitration between customers and securities firms is governed by the Federal Arbitration Act (the "Act"), 9 U.S.C. §§ 1 *et seq.* *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis,* 903 F.2d 109, 112 (2d Cir.1990).

### Timeliness

■ Prudential's effort to stay all of the respondents from proceeding with their claims on the ground that their claims are untimely antedated the Second Circuit's decision in *PaineWebber Inc. v. Bybyk,* 81 F.3d

1193 (2d Cir.1996). That case makes it clear that the issue of timeliness here is for the arbitrators. *Compare Insurance Co. of North America v. ABB Power Generation,* 925 F.Supp. 1053 (S.D.N.Y.1996) (timeliness for court where contract so provides). Accordingly, Prudential's motion to stay the arbitration on this ground is denied.

### The Existence of Arbitration Agreements

Respondents' effort to avoid the venue provision of the AMEX window begins with their contention that many of the respondents must have signed arbitration agreements with Prudential that permit AAA arbitration free of venue constraints. As indicated, the sole basis for this contention is the Hume affidavit.

■ Under Section 4 of the Act, 9 U.S.C. § 4, the determination of whether there is an agreement to arbitrate is for the Court. *E.g., Bybyk,* 81 F.3d at 1198. Where there is a genuine issue as to a fact material to this determination, a hearing is required.[3] Here, however, there is no genuine issue.

In essence, the respondents—although not one of them has said so under oath—assert through counsel that (1) they signed arbitration agreements with Prudential, and (2) the terms of those agreements permitted AAA arbitration outside New York. Mr. Hume's affidavit seeks to establish both propositions by contending that it was the routine practice of Prudential to require that customers sign such agreements and that the agreements in use during the relevant period all contained such terms.

■ The conduct of an organization on a particular occasion may be established through evidence that it routinely so conducted itself, even absent direct evidence as to the occasion in question. FED.R.EVID. 406. Hence, if there were competent evidence that Prudential routinely required the execution

---

3. In determining whether there is a genuine issue for trial, the Court applies the provisions of Rule 56 and the standards governing motions for summary judgment. *See* FED.R.CIV.P. 81(a)(3). *But see Interbras Cayman Co. v. Orient Victory Shipping Co.,* 663 F.2d 4, 7 (2d Cir.1981); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.,* 462 F.2d 673, 676 (2d Cir.1972); *Almacenes Fernandez, S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945) (party must unequivocally deny making of agreement and produce some substantiation to raise genuine issue as to non-existence of arbitration agreement).

of such agreements, there would be a genuine issue of material fact. Mr. Hume's affidavit, however, does not rise to that level.

FED.R.EVID. 602 requires that percipient testimony rest on personal knowledge. Mr. Hume has no personal knowledge of what Prudential's practices were during the relevant period with respect to insisting on arbitration agreements as a condition of opening an account. He has no competent basis for saying that Prudential insisted, in practice, on an executed agreement for the opening or maintenance of every account or even for most accounts. Even more important, his affidavit concerning the terms of the agreements he believes were signed rests solely on conclusions drawn from a number of customer account agreements produced in other litigation that he has reviewed. As Ms. Tait's affidavit shows, his premise that the account forms he reviewed included examples of all of those used by Prudential simply is wrong. Other forms in use did not permit resort to AAA arbitration. Hence, even if Mr. Hume's affidavit were sufficient to permit the inference that these respondents signed arbitration clauses, which it is not, it would be insufficient to permit the inference that the clauses they signed permitted arbitration before the AAA without regard to venue.

■ Nor would respondents be aided by considering Mr. Hume's affidavit as a proffer of expert testimony. Even assuming that this is an appropriate subject for expert testimony, which the Court doubts, the information relied upon by Mr. Hume is not an adequate basis for his opinion. He has no personal or even hearsay knowledge as to the extent to which Prudential in fact insisted on signed agreements. He relied on an incomplete sample of the forms of agreements Prudential actually used. His testimony simply is of no value.[4]

Apart from the eight as to whom Prudential has dismissed its petition, respondents have come forward with no competent evidence that they signed written arbitration agreements permitting AAA arbitration without restriction of venue. Accordingly, respondents (other than the eight) may arbitrate before the AAA only pursuant to the ASE window.

*Collateral Estoppel*

Respondents' next effort to avoid the venue restriction in the AMEX window is the contention that Prudential is collaterally estopped to assert that the AMEX window restricts venue. Specifically, it contends that Prudential is precluded from doing so because it has litigated and lost the question whether the reference in the provision to the City of New York restricts venue as distinguished from describing the AAA. *Wade v. Prudential Securities, Inc.*, [1993–94 Transfer Binder] FED.SEC.L.REP. (CCH) ¶ 98,117, 1994 WL 124428 (N.D.Cal.1994); *Prudential Securities, Inc. v. Thomas*, 793 F.Supp. 764 (W.D.Tenn.1992); *Joseph v. Prudential Bache Securities, Inc.*, [1991 Transfer Binder] FED.SEC.L.REP. (CCH) ¶ 96,184, 1991 WL 370135 (Fla.Cir. May 1, 1991).

■ The parties mistakenly have briefed this issue on the assumption that the preclusive effect to be accorded the prior determinations is governed by New York law. This Court, however, is bound by statute and recent decisions of the Supreme Court and the Second Circuit to give the determination in the *Joseph* case, which was rendered by a Florida state court, the same effect that the judgment would be given in the courts of Florida, the rendering state. *E.g., University of Tennessee v. Elliott*, 478 U.S. 788, 794, 106 S.Ct. 3220, 3223–24, 92 L.Ed.2d 635 (1986); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 1334–35, 84 L.Ed.2d 274 (1985); *Kulak v. City of New York*, 88 F.3d 63, 71–72 (2d Cir.1996); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir.1996); 28 U.S.C. § 1738. It is clear also that the preclusive effect of a judgment rendered by a

---

4. If it were offered at trial, the Court would exclude it under Rules 703 and 403. There has been no showing that Mr. Hume's proffered testimony is based on information of a type reasonably relied upon by experts. Even if it were, its deficiencies would make the prejudicial effect of the evidence outweigh substantially its probative value.

federal court where jurisdiction in the first case rested on the presence of a federal question is determined by federal law and, while the Second Circuit has not definitively ruled on the point, it appears that the same rule governs where jurisdiction in the first case was based on diversity of citizenship. *E.g., Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir.1989); *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1502 (11th Cir. 1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985); *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 715 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *B.N.E., Swedbank, S.A. v. Banker*, 791 F.Supp. 1002, 1005 (S.D.N.Y. 1992); *Johnson v. Eli Lilly and Co.*, 689 F.Supp. 170, 172–73 (W.D.N.Y.1988); *see Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Accordingly, it is necessary to examine both Florida and federal issue preclusion law.

### The Florida Judgment

■ Florida law need not detain us long. While Florida recognizes the doctrine of collateral estoppel, "it traditionally [has] required that there be a mutuality of parties in order for the doctrine to apply. [citations omitted] Thus, unless both parties are bound by the prior judgment, neither may use it in a subsequent action." *Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla.1995). *Accord, e.g., Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano*, 450 So.2d 843 (Fla.1984).[5] As the respondents in this case are not bound by the judgment rendered by the Florida Circuit Court in the *Joseph* case, neither is Prudential.

### The Federal Judgments

■ Under federal law, an issue actually litigated and necessarily determined ordinarily may not be relitigated between the parties. *E.g., Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5,

58 L.Ed.2d 552 (1979). The Supreme Court subsequently abandoned the mutuality requirement, "at least in cases in which a patentee seeks to relitigate the validity of a patent after a federal court in a previous lawsuit has already declared it invalid"—a "defensive" use of the doctrine. *Parklane Hosiery*, 439 U.S. at 327, 99 S.Ct. at 650 (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). In *Parklane Hosiery*, it abandoned any strict requirement of mutuality in offensive situations as well, although it recognized that there are stronger arguments against permitting offensive (as opposed to defensive) use of prior judgments and held that "trial courts [have] broad discretion to determine when [preclusion] should be applied" in such cases. 439 U.S. at 331, 99 S.Ct. at 651. Given the Supreme Court's difference in approach to offensive and defensive uses of collateral estoppel, it is important to focus first on the distinction between these uses in order to characterize properly the use that respondents here seek to make of the prior judgments.

In *Parklane Hosiery*, the plaintiffs sought damages and other relief for the defendants' alleged securities fraud. The defendants previously had litigated and lost a similar claim brought against them by the SEC. The plaintiffs sought to preclude the defendants from contesting the issues resolved against them in the SEC action, a use the Court characterized as "offensive." It stated in a footnote, however, that:

> "offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4.

Literal application of the *Parklane* footnote here, it might be argued, should result

---

**5.** The Florida Supreme Court has made one exception, not relevant here, to the requirement of mutuality. *Zeidwig v. Ward*, 548 So.2d 209 (Fla.1989). It has refused, however, to extend that exception beyond its peculiar facts. *Stogniew*, 656 So.2d at 919.

in characterization of respondents' attempted use of collateral estoppel as defensive, as they seek to prevent the petitioner from asserting a contention that the petitioner previously litigated and lost against others. But this would be inconsistent with both the holding in *Parklane* and the reality of this case.

■ *Parklane*'s holding was that the use of collateral estoppel to prevail on a claim by precluding a defense is an offensive use. That is exactly what respondents seek to do here, although the alignment of parties at first blush is confusing because petitioner is the respondent, and respondents the claimants, in the arbitrations. Petitioner is in the "plaintiff" position in this Court only because it seeks to vindicate under the Federal Arbitration Act what is, or at least is analogous to, an improper venue defense to the arbitration claims. In substance, then, petitioner is a defendant and respondents are plaintiffs. The "real plaintiffs" thus are seeking to preclude the "real defendant" from asserting a defense based on the fact that it asserted and lost that defense in the two prior federal cases. This therefore is a classic case of offensive collateral estoppel.[6]

*Parklane Hosiery* indicated that nonmutual collateral estoppel may not be applied offensively where, *inter alia*, (1) the judgment relied upon is inconsistent with other decisions, or (2) it would be unfair for other reasons. 439 U.S. at 330–31, 99 S.Ct. at 651–52. Here, the two district court decisions relied upon by respondents are inconsistent with the earlier holdings of the Second Circuit. *See also Tomkinson v. Dean Witter Reynolds, Inc.*, No. CV 95–0143070, 1995 WL 470621, at *2 (Conn.Super. Aug. 1, 1995). Prudential did not choose the fora. Moreover, the fact that Prudential did not appeal, notwithstanding that the decisions were flatly contrary to Second Circuit decisions and thus strong candidates either for reversal or *certiorari*, suggests that the amounts in controversy gave it little incentive to do so. *See also* RESTATEMENT (SECOND) JUDGMENTS § 29 (1982). Accordingly, this Court declines to give preclusive effect to the prior federal judgments relied upon by respondents.[7]

Accordingly, Prudential is not precluded from asserting here that the AMEX window requires arbitration in New York.

*Abstention*

Finally, respondents argue that this Court should abstain or stay its hand with respect to the small number of respondents who are California residents on the theory that the issue tendered here is before the California court. Respondents rely on *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Respondents, however, overstate their case and offer no proper basis for such relief.

■ *Moses H. Cone* reaffirmed the Court's earlier decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), where it made clear that "federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936 (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246). The *Colorado River* Court, indeed, wrote that the

---

6. This view is confirmed by the Restatement, which defines "offensive" use as the invocation of issue preclusion to "establish[] liability of the defendant in the second action" and "defensive" use as its invocation "to resist recovery in the second action ..." RESTATEMENT (SECOND) JUDGMENTS § 29, *cmt. d* (1982). *See also Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Olegario v. United States*, 629 F.2d 204, 215 (2d Cir.1980), *cert. denied*, 450 U.S. 980, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Masonoff v. DuBois*, 899 F.Supp. 782, 786 (D.Mass.1995). It is confirmed also by the *Parklane* Court's reliance on the example of personal injury plaintiff in a mass tort case relying on a prior

plaintiff's verdict to establish the defendant's liability notwithstanding 25 prior defendant's verdicts to illustrate an "offensive" use of collateral estoppel. *Parklane Hosiery*, 439 U.S. at 330 n. 14, 99 S.Ct. at 651 n. 14.

7. This conclusion makes it unnecessary to consider whether the issue on which preclusion is sought is, or is sufficiently analogous to, an unmixed question of law and therefore not a proper subject of preclusion under *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924), and its progeny. *See also* RESTATEMENT (SECOND) JUDGMENTS § 28(2) & *cmt 6*.

circumstances permitting dismissal of a federal case in deference to a concurrent state proceeding "are considerably more limited than the circumstances appropriate for abstention" on other grounds, characterizing them as "exceptional." 424 U.S. at 818, 96 S.Ct. at 1246. While eschewing any hard and fast rule, *Colorado River* and *Moses H. Cone* together indicate that four principal factors inform the exercise of a district court's discretion in determining whether to defer in such a situation: (1) whether the state court has assumed jurisdiction over property, (2) the relative convenience of the fora, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained. *Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936–37; *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47. *Moses H. Cone* indicated that the federal or state source of the rule of decision also is relevant. *Moses H. Cone*, 460 U.S. at 23–24, 103 S.Ct. at 941. In any event, however, "*[o]nly the clearest of justifications will warrant dismissal*" of the federal action. *Id.* at 16, 103 S.Ct. at 937 (quoting *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247) (emphasis in *Moses H. Cone* ).

Here, neither court has asserted jurisdiction over any property or other res. This forum is no less convenient than the California state court for resolution of the issue here presented—the essentially legal question whether those who avail themselves of the AMEX window must do so in New York City. The construction of the AMEX window presents a question in which there is a strong federal interest, as the provision is a part of the regulatory fabric governing securities exchanges under the Securities and Exchange Act of 1934.

Respondents argue that the policy against piecemeal litigation supports abstention in favor of California. Closer analysis, however, demonstrates that this is not so. The California court will decide this issue as to the California residents but not as to the non-residents. Hence, Prudential's position on the AMEX window issue will have to be litigated somewhere as to the non-residents. Piecemeal litigation is inevitable and cannot be avoided by abstention.

Respondents contend also that the earlier filing of the California action supports abstention. To paraphrase the *Moses H. Cone* Court, respondents' "priority argument gives too mechanical a reading to the 'priority' element of the *Colorado River* balance." 460 U.S. at 21, 103 S.Ct. at 939. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.*

As the preceding discussion indicates, respondents have not sought to bring on a motion to compel arbitration in the California action despite the fact that such a motion is essential to present the issue. Prudential, apart from reserving its rights by pleading the venue issue in its answer, has not presented the question either. In consequence, considered in the "pragmatic, flexible manner" mandated by *Moses H. Cone* and *Colorado River*, this action is more advanced than the California proceeding. When that is weighed together with the California priority in filing, the priority issue cuts as much in favor of Prudential as respondents.

Finally, respondents argue that the Court should abstain because Prudential's resort to this forum is a "cynical attempt at forum shopping." (Res.Mem. 8) The characterization, discounting the rhetorical excess, is a fair one. But it applies with at least equal force to respondents' own effort to compel arbitration in San Francisco of claims of 147 unrelated claimants hailing from 24 states involving different limited partnerships. In short, the accusation of forum shopping brings to mind visions of pots and kettles. It contributes nothing to resolution of the issues presented.

In sum, this is not a sufficiently exceptional case to lead this Court to decline to exercise the jurisdiction conferred upon it.

*Conclusion*

The application to stay the arbitration claims brought by respondents Irwin Fox, Benjamin Deacon, Mario Marini, Richard and Sharon Leland, and William Dismukes is granted. Those respondents are precluded by their customer agreements from arbitrat-

ing their claims against Prudential before the AAA. If they wish to arbitrate, they must do so in accordance with the terms of those agreements.[8]

The application to stay the arbitration claims of all other respondents is granted, provided, however, that these remaining respondents may proceed to arbitrate their claims against Prudential in New York City before the AAA.

The petition, insofar as it seeks to stay arbitration on the ground that respondents' claims are untimely, is denied.

SO ORDERED.

---

8. Copies of the agreements are annexed to the affidavit of Regina Tait.