NYCAL CORPORATION, Plaintiff,

v.

INOCO PLC and Downshire N.V., Defendants.

No. 96 Civ. 7159(LAK).

United States District Court, S.D. New York.

June 30, 1997.

Jeffrey E. Glen, Deforest & Duer, New York City, for Plaintiff.

Jeffrey L. Braun, Rosenman & Colin, LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This litigation is one of several that has arisen out of the 1991 sale by Inoco PLC ("Inoco") and Downshire N.V. ("Downshire") of a majority stake in Gulf Resources and Chemical Corporation ("Gulf") to plaintiff Nycal Corporation ("Nycal").

Defendants move to dismiss the complaint, or various counts therein, on four grounds. First, defendants contend, the action should be dismissed or stayed in favor of ongoing litigation in the United Kingdom. Next, they assert, Counts I and II should be dismissed because Nycal failed to plead fraud with specificity. Finally, they argue that Count III should be dismissed because Nycal is collaterally estopped from bringing the claim and because it fails to state a cause of action. For the foregoing reasons, the motion is granted in part and denied in part.

### Facts

Briefly stated, the facts are as follows.[1] Inoco, a United Kingdom property investment company, and Downshire, a wholly owned subsidiary, entered into a stock purchase agreement ("SPA") with Nycal on July 15, 1991 pursuant to which defendants' controlling stake in Gulf was sold to Nycal for approximately $34,000,000. Soon thereafter, Nycal brought suit in the United Kingdom alleging that Inoco and Downshire had violated the terms of the SPA. (Rowland Dec. Ex. D) The litigation was terminated with a Settlement Agreement dated October 4, 1991 in which the amount Nycal paid for the Gulf shares was reduced by $575,000. The Settlement Agreement stated that "each party to the [SPA] hereby acknowledges that it has no further claims arising out of the SPA or the transaction contemplated thereby or any guarantee given in relation thereto ... and hereby waives any such claim as may now exist or as may arise after the date hereof." (*Id.* Ex. E)

Interallianz Bank, A.G. ("IBZ"), which financed Nycal's acquisition, sued Nycal in this Court in 1993 for nonpayment of notes Nycal had executed in favor of IBZ. Nycal counterclaimed on the theory that IBZ had been a party to defendants' alleged fraud. Judge Patterson dismissed Nycal's counterclaims in *Interallianz Bank Zurich AG v. Nycal,* No. 93 Civ. 5024 (RPP), 1994 WL 177745, 1994 LEXIS 5954 (S.D.N.Y. Mar. 4, 1996) and granted summary judgment to IBZ on October 15, 1996. (Carnevale Aff. Ex. E)

On June 9, 1995, Inoco and Downshire, among others, brought suit in the United Kingdom seeking a declaration that the Settlement Agreement was binding and extinguished all of the claims Nycal now is asserting in this Court. The United Kingdom action remains pending.

This suit was commenced on August 13, 1996. Counts I and II of the complaint allege that defendants fraudulently induced Nycal to enter into the Settlement Agreement and SPA, respectively. Count III contends that defendants breached warranties contained in the SPA.

### Discussion

#### Stay or Dismissal in Favor of the United Kingdom Litigation

Defendants contend first that this action should be stayed or dismissed in favor of the suit currently pending in the United Kingdom.[2]

"When two sovereigns have concurrent in personam jurisdiction one court will ordinarily not interfere with or try to restrain proceedings before the other. '[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.'" *China Trade & Development Corp. v. M.V. Choong Yong,* 837 F.2d 33 (2d Cir.1987)

---

1. The Court assumes familiarity with its opinion of January 13, 1997. *Nycal Corp. v. Inoco PLC,* 949 F.Supp. 1115 (1997).

2. On October 18, 1993 involuntary bankruptcy proceedings were begun against Gulf in the District of Idaho. The debtor subsequently commenced claims against both Nycal and Inoco in the bankruptcy court. Defendants here originally moved, in the alternative, for dismissal or stay in favor of the Idaho bankruptcy proceeding but dropped this claim in their reply brief. (Reply 9)

(quoting *Laker Airways, Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 926 (D.C.Cir.1984)) (other citations omitted).

The *China Trade* court [3] indicated that five factors are significant in determining whether to depart from the ordinary rule of permitting parallel litigation: whether (1) a policy in the enjoining forum would be frustrated; (2) the maintenance of the action would be vexatious; (3) the court's jurisdiction is threatened; (4) other equitable considerations would be sacrificed; and (5) delay, inconvenience, expense, race to judgment or inconsistency would result. In particular, courts should focus on the first and third factors. *Id.* at 36–37; *see also Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 884 (S.D.N.Y.1991).

Here, the United Kingdom litigation presents no threat to this Court's jurisdiction and *vice versa.* The parties have identified no policy that would be frustrated by permitting parallel litigation to continue. Moreover, the United Kingdom litigation is still in the preliminary stages and could be dismissed without a determination on the merits as Nycal, a defendant there, is contesting jurisdiction. *See Herbstein v. Bruetman,* 743 F.Supp. 184, 190 (S.D.N.Y.1990) (action not dismissed in favor of foreign litigation in preliminary stages). Accordingly, the Court declines to stay this action in favor of the United Kingdom litigation.

### Rule 9(b)

Defendants' next argument is that Counts I and II are not pleaded with particularity as required by FED.R.CIV.P. 9(b).

Count I alleges only that Nycal's decision to enter into the Settlement Agreement "was induced, in whole or in part, by misrepresentations and omissions made by agents and officers of the [defendants] at the time of the negotiation and signing of" the Settlement Agreement. (Cpt ¶ 12) "Rule 9(b) requires that the complaint allege the essential 'when, what, why and to whom'—when and to whom the statement was made, what it contained, and why it was false or misleading—with particularity." *Spira v. Nick,* 876 F.Supp. 553, 559 (S.D.N.Y.1995). Plaintiff's contentions surely are insufficient under this standard. Nycal does, however, make sufficiently specific allegations on pages 17 through 19 of its brief. Because the Court would grant plaintiff leave to amend, the Court treats plaintiff's brief as a motion to amend and deems the complaint to be amended to include Nycal's contentions on pages 17 through 19.

Defendants respond that even though the complaint, thus amended, is sufficiently specific, it was unreasonable for Nycal to rely on representations made by David Rowland, an officer of Inoco and Downshire, whom Nycal previously had accused of fraud. (Pl. Mem.18) While Nycal's alleged reliance on defendants' statements may indeed have been unreasonable, *see Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 749 F.Supp. 525 (S.D.N.Y.1990), the issue is one of fact and therefore not properly decided on the pleadings.

Count II alleges that Nycal was induced fraudulently to enter into the SPA. The complaint states that the alleged fraud was "described in detail in pleadings previously filed in two other actions," which were incorporated by reference. (Cpt ¶ 8) These incorporated pleadings describe the alleged fraudulent inducement in detail. For example, Nycal mentions 26 occasions between October 5 and December 31, 1990 in which Rowland caused Gulf to engage in allegedly fraudulent behavior. (Carnevale Aff. Ex. B, at 9–10). Count II thus meets the strictures of Rule 9(b).

Defendants' motion to dismiss Counts I and II for failure to plead fraud with particularity is denied.

### Collateral Estoppel

Count III of the complaint alleges that defendants breached warranties contained in

---

3. *China Trade* dealt with a motion to enjoin foreign litigation in favor of an action in the United States, the opposite of the scenario at bar, and defendants rely to some extent on this fact. (Reply 9) However, it is apparent from the broad language in *China Trade* that the same factors should guide a court in deciding whether to stay domestic litigation in favor of foreign litigation. *See Evergreen Marine Corp. v. Welgrow International, Inc.,* 942 F.Supp. 201 (S.D.N.Y.1996).

the SPA. The parties agree that the "warranties" in question are contained in Section 8 of the contract, entitled "Conditions to Obligations of the Buyer." (Rowland Dec. Ex. A; Def. Mem. 26; Pl. Mem. 11) Section 8, in relevant part, provides that it was a condition of the buyer's obligation to consummate the transaction that:

"(i) from the date of this Agreement to the date of the Closing ... the Company [Gulf] shall not have:

"(i) entered into any transaction other than in the ordinary course of its business;

"(ii) mortgaged, pledged, or subjected to lien, charge or any other encumbrance, or agreed so to do, any of its assets other than in the ordinary course of business;

\*　　\*　　\*　　\*　　\*　　\*

"(j) the Company and its subsidiaries shall have on the date of Closing an aggregate of at least $50,000,000 in cash and cash equivalents ..." (Rowland Dec. Ex. A)

Nycal claims that Gulfpac, a subsidiary of Gulf, engaged in financial legerdemain that violated Sections 8(i)(i)-(ii) in order to meet the $50,000,000 target, thus breaching an alleged warranty given by the sellers. Defendants respond that, even if true, the claim both is barred by collateral estoppel and fails to state a cause of action.[4]

Defendants' collateral estoppel argument rests on *Interallianz Bank Zurich.* As previously indicated, Nycal there counterclaimed against IBZ, which had provided financing for Nycal's acquisition of Inoco's shares of Gulf. It alleged that "IBZ was bound by the warranties and representations in the SPA ... [and that] IBZ breached those warranties and representations ..." (Carnevale Aff. ¶¶ 75–77) The crux of the claim was that IBZ was a participant in the actions of Gulfpac, which allegedly ran afoul of Section 8(i). Judge Patterson, however, held that the counterclaim failed on two grounds, one of which was that "[p]aragraph 8(i) applies only to transactions by Gulf, not to transactions of [Gulfpac]." *Interallianz Bank Zurich AG,* 1994 WL 177745, at \*6, 1994 LEXIS 5954, at

\* 18. The question therefore is whether this ruling precludes Nycal from relitigating the claim here.

"The doctrine of collateral estoppel represents a choice between the competing values of correctness, uniformity, and repose ... Our system resolves the conflict among values by holding that an issue determined in one proceeding normally may not be reexamined." *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Before examining the merits of defendants' collateral estoppel argument, however, the Court must address whether federal or state preclusion law governs.

"It is clear ... that the preclusive effect of a judgment rendered by a federal court where jurisdiction in the first case rested on the presence of a federal question is determined by federal law and, while the Second Circuit has not definitively ruled on the point, it appears that the same rule governs where jurisdiction in the first case was based on diversity of citizenship." *Prudential Securities, Inc. v. Arain,* 930 F.Supp. 151, 155–56 (S.D.N.Y.1996); *accord, B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002 (S.D.N.Y.1992); *see Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 n. 1 (2d Cir.1995). While *Interallianz Bank Zurich* was not based on federal question jurisdiction, the choice of law ultimately is not material here, as the result would be the same under either federal or New York law.

■ Under federal law, "[f]or the bar to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a final judgment on the merits." *Gelb,* 798 F.2d at 44. Nycal contends that *Interallianz Bank Zurich* did not decide the exact issue at bar and, even if it did, that Judge Patterson's holding in the

---

4. Although the parties do not raise the issue, the Court questions whether Section 8 incorporates any "warranties" at all. Section 8 merely sets forth conditions of the buyer's obligation to purchase.

alternative means that the issue was not necessarily decided.

The first of defendants' contentions is utterly without merit. Judge Patterson quite plainly decided exactly the same question presented here—whether Gulfpac, as distinguished from Gulf, was bound by Section 8(i) of the SPA. So defendants' position stands or falls on the question whether the fact that the ruling as to Section 8(i) was an alternative holding affects its preclusive force.

The issue as to the preclusive force of the alternative holding arises from the principle that a previous determination of an issue is conclusive only if, among other things, the determination was necessary to the result. Indeed, the Restatement takes the position that neither of two or more alternative holdings, each alone sufficient to support the result, is preclusive, the argument being that determinations in the alternative (1) "may not have been as carefully or rigorously considered" and (2) lessen the losing party's incentive to appeal, as it must prevail on two or more grounds in order to overturn the judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 27, *Cmt. i* (1982). This argument, however, has met with little success in this Circuit. As the Court of Appeals wrote in *Gelb*, "[t]he general rule in this Circuit is that 'if a court decided a case on two grounds, each is a good estoppel.'" 798 F.2d at 44–45 (quoting *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir.1926)). Hence, if the issue is governed by federal law, the result would be quite plain: Count III would be barred.

While New York arguably has not gone quite as far as *Gelb*, this Court is satisfied that New York state courts also would accord preclusive effect to Judge Patterson's alternative holding. In *Malloy v. Trombley*, 50 N.Y.2d 46, 52–53, 427 N.Y.S.2d 969, 973, 405 N.E.2d 213 (1980), the Court of Appeals wrote:

"[W]ithout intending to enunciate any broad rule, we hold in this instance that the rule of issue preclusion is applicable notwithstanding that in a precise sense the issue precluded was the subject of only an alternative determination by the trial court. The issue was fully litigated, and the party precluded had full opportunity to be heard and was in no way, motivationally or procedurally, restricted or inhibited in the presentation of his position. Additionally, and critically in our view, the decision of the trial court gives significant internal evidence of the thorough and careful deliberation by that court ... and the determination made, although recognized to be an alternative, served a substantial operational purpose in the judicial process, thus negativing any conclusion that the trial court's resolution was casual or of any lesser quality than had the outcome of the trial depended solely on this issue."

In later decisions, the New York Court of Appeals "distinguished the case in which it is clear that the first litigation considered the issue fully and made a determination, even if in the alternative, from the case where it is unclear, because of the nature of the decision, that the litigant was afforded his day in court." *Shanley v. Callanan Industries, Inc.*, 54 N.Y.2d 52, 55–56, 444 N.Y.S.2d 585, 429 N.E.2d 104 (1981) (citations omitted); *see Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457–58 (2d Cir.1995). But these qualifications have no bearing in this case.

The issue here in question was litigated fully before Judge Patterson. There is no suggestion that Nycal's legal representation was inadequate. Judge Patterson carefully considered the warranty issue and spelled out his reasoning with care. He did not treat the issue in a lesser manner due to its being an alternative holding. Hence, this Court concludes that Nycal would be precluded from bringing Count III even if the effect of the judgment in *Interallianz Bank Zurich* were governed by New York law.

*Conclusion*

Defendants' motion is granted to the extent that Count III is dismissed but is denied in all other respects.

SO ORDERED.