LOCAL UNION NO. 38, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO, Plaintiff,

v.

A & M HEATING, AIR CONDITIONING, VENTILATION & SHEET METAL, INC., Defendant.

No. 03 CIV. 4149(WCC).

United States District Court, S.D. New York.

April 21, 2004.

---

Law Offices of Jeffrey S. Dubin, Attorneys for Plaintiff, Huntington, Jeffrey S. Dubin, Esq., *Of Counsel.*

Joseph P. Carey, P.C., Attorneys for Defendant, Fishkill, Joseph P. Carey, Esq., *Of Counsel.*

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Local Union Number 38, Sheet Metal Workers' International Association, AFL–CIO (the "Union") brings this action against defendant A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc. ("A & M Heating"). The Union alleges *inter alia* that A & M Heating is the alter ego of Hudson Heating, Inc. ("Hudson Heating" or the "company") and is therefore liable for breach of Hudson Heating's Collective Bargaining Agreement (the "CBA"). (Complt.¶ 11.) The Union moves to compel arbitration and stay this action pursuant to an arbitration clause that appears in Hudson Heating's CBA. In its Supplemental Memorandum of Law filed with the Court in response to a

request for further briefing, A & M Heating contended that this action must be dismissed pursuant to FED. R. CIV. PROC. 12(b)(1) for lack of subject matter jurisdiction because A & M Heating is not the alter ego of Hudson Heating. In its Supplemental Reply Memorandum of Law, the Union responded, albeit incompletely and unpersuasively, to A & M Heating's jurisdictional objection.[1] For the reasons stated herein, plaintiff's motion is denied, its Complaint is dismissed in its entirety with prejudice and judgment is entered in favor of defendant.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. Alex Mancone became a member of the Union in November 1983 when he secured his first union job in the sheet metal trade. (Alex Mancone Decl. ¶ 4.) During his years of employment in the industry, Alex Mancone observed other Union members participate in family businesses in the following manner: someone in the family other than the Union member formed a company, entered into a collective bargaining agreement with the Union and hired the Union member. If that business experienced a slow period, the Union member could obtain employment with other employers through the Union's hiring hall. (*Id.* ¶ 5.) Sometime prior to January 1996, Alex Mancone began to get only sporadic work referrals from the Union's hiring hall. As a result, Alex and his wife, Lois Mancone, encountered financial difficulties. Although Lois Mancone wanted to obtain employment,

---

1. Because defendant only cited "Rule 12(b)" and expressed its jurisdictional objection somewhat inartfully, we will not treat defendant's objection to jurisdiction as a formal motion to dismiss under Rule 12(b)(1). However, when we conclude subject matter jurisdiction is lacking we must dismiss whether there is a formal motion before the Court or not. *See Moodie v. Fed. Res. Bank of N.Y.,* 58 F.3d 879, 882 (2d Cir.1995) (" 'Whenever it appears by suggestion or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.' ") (quoting *Fox v. Bd. of Trs. of the State Univ.,* 42 F.3d 135, 140 (2d Cir.1994)).

she did not have particularly marketable work experience because she had devoted her time to raising the couple's two children who were in high school at the time. (Lois Mancone Decl. ¶ 5.) The Mancones decided that the best solution to their dilemma was to have Lois Mancone form a sheet metal business and devote her time to running it while her husband worked for the company or for other employers that were affiliated with the Union. (*Id.* ¶¶ 6–7.)

Hudson Heating was incorporated under the laws of New York on January 25, 1996. (Alex Mancone Decl., Ex. 2.) Lois Mancone owned 100% of the shares of Hudson Heating and was listed with the Department of State as the corporation's agent for service of process. (*Id.*) Lois Mancone entered into a lease for a shop located at 577 North Main Street in Brewster, New York, and Hudson Heating operated out of the premises. (Lois Mancone Decl. ¶ 8.) She also negotiated with the Union and executed on behalf of Hudson Heating a CBA that became effective July 31, 1998 and expired April 30, 2002. (*Id.* ¶ 9.) Lois Mancone was the only party authorized to sign checks and approve expenditures for the company. (Alex Mancone Decl. ¶ 24.)[2] In his role as the company's working foreman, Alex had no control over Hudson Heating's labor relations and did not participate in any negotiations with the Union; Lois Mancone controlled this area of the business. (*Id.* ¶ 9; Lois Mancone Decl.

¶ 9.) Similarly, Lois Mancone claims that she generally called the Union to request employees for Hudson Heating. (*Id.* ¶¶ 9, 13; Alex Mancone Decl. ¶ 9.) Union president Gino Columbo claims that "Lois Mancone never called Local 38 to request workers. Alex Mancone was always the person that requested workers." (Columbo Aff. ¶ 9.) Lois Mancone states that if Columbo is truly under the impression that she never requested workers it is because she always called the Union's business agent Steven Bender to do so. (Lois Mancone Decl. ¶ 13.) Although the Union had the opportunity to address this point in its reply, it did not dispute Lois's statement. The evidence also demonstrates that Lois Mancone hired a worker that was allowed to join the Union after thirty days of employment with Hudson Heating. (Alex Mancone Decl. ¶ 18.)

Lois Mancone attended all contract negotiations relating to Hudson Heating's jobs, attended job meetings and collected all accounts receivable. (Lois Mancone Decl. ¶¶ 10–11.) When Alex was not present at a particular job, Lois visited the job site to ensure that the helpers had arrived to work and were performing their duties in a satisfactory manner. (*Id.*) She also delivered materials to job sites from time to time. (*Id.*) Columbo contends that "Lois Mancone was never present on any of Hudson's job sites." (Columbo Aff. ¶ 10.) However, the Union president could

---

**2.** Although the Union does not dispute that Lois Mancone was the only party authorized to sign checks for the company, it claims that Lois would not issue a check unless Alex previously authorized it and that Alex actually controlled Hudson Heating. (Pl. Mem. Supp. Mot. Compel at 2.) The Union offers no admissible evidence to support this contention. It merely offers the statement of Union president Gino Columbo wherein he claims that Lois Mancone told him that "she had nothing to do with the business, except to make out and sign the checks that Alex told her to make

out." (Columbo Aff. ¶ 11.) As discussed *infra* in Part IV.A., this statement is hearsay and does not fall within the admission exception to the rule against hearsay because Lois Mancone is neither a party to this action nor an agent of A & M Heating. We decline to give it any weight especially in light of the uncontroverted, direct evidence offered by defendant to the contrary. Other hearsay statements offered by the Union to demonstrate that Lois Mancone did not run the company (*Id.* ¶¶ 12–13) will similarly be disregarded.

not possibly have such information without constant monitoring of Hüdson Heating's job sites. Therefore, we decline to give Columbo's statement any weight. *See Prudential Sec. Inc. v. Arain,* 930 F.Supp. 151, 155 (S.D.N.Y.1996) (declining to credit an affidavit on a motion to compel arbitration where the declarant had no competent basis for testifying as to the inner workings of the petitioner's company).[3]

The Union contends, and defendant does not deny, that Hudson Heating utilized in its operations the same vans—a blue Ford and a blue Chevrolet—that A & M Heating now employs. (Columbo Aff. ¶ 15.) However, there is no indication as to the ownership of these vehicles or whether they were the only vehicles that were used by the two companies. Columbo also claims that Hudson Heating utilized certain shop equipment leased from Tempaire, Inc. (Columbo Aff. ¶ 20.) Lois Mancone indicates that the metal forming equipment in question was not leased but was acquired by Alex Mancone personally in 1996 and later used by him while working for Hudson Heating. (Lois Mancone Decl. ¶ 18.)

Sometime in 1998, near one of Hudson Heating's job sites, Alex Mancone and Union business agent Steven Quanto had a heated verbal exchange in which Quanto referred to Alex Mancone as a "piece of shit." (Alex Mancone Decl. ¶ 11.) Subsequent to this altercation, Alex Mancone alleges that the Union deliberately failed to credit benefit payments from Hudson Heating and then ordered a Union member to leave the company's job site, for the stated reason that Hudson Heating was in default. Alex Mancone reported the Union to the Federal Bureau of Investigation ("FBI"), complaining that this conduct amounted to racketeering. (*Id.* ¶ 14.) After this, defendant contends, and the Union offers no evidence to the contrary, that the Union ruined Hudson Heating by continually refusing to refer workers to it. Because Hudson Heating was bound by the CBA, it could not hire non-union laborers and without workers Hudson Heating could not take on any new jobs. (*Id.* ¶ 19.) Defendant also claims, and again the Union has offered no evidence to the contrary, that in late 1999 when Alex Mancone contacted Columbo to request work with other Union employers, Columbo informed him that he would see to it that Alex Mancone never again worked for a Union employer. (*Id.* ¶ 20.) Accordingly, Alex resigned from the Union. (*Id.* ¶ 21, Exs. 5, 6.)

In the Union's Reply Memorandum of Law, counsel for the Union declines to address directly the allegations of wrongdoing made by Alex Mancone in his sworn declaration opposing the Union's motion. (Pl. Reply Mem. Supp. Mot. Compel at 1.) Counsel states that the Union does not need to refute this evidence because the statements are untrue and irrelevant and asks the Court to take judicial notice of the alleged fact that no Union official was ever indicted for the behavior Alex Mancone reported. (*Id.*) Counsel next states, "We invite the Employer to make these allegations in an unprotected public forum." (*Id.*) Apparently, counsel is under the impression that he can remedy his failure to provide any evidence to refute Alex Mancone's sworn statement merely by implying that they are slanderous. He cannot. *See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL–CIO,* 982 F.2d 884, 891 (3d Cir.1992) (holding that statements in a brief are insufficient to rebut affidavits offered to oppose a motion to compel arbitration). Furthermore, even if it is true that no Union

---

**3.** Even if we were to fully credit this statement, however, it is irrelevant. A company executive can manage and control a company without going out into the field.

official has been indicted for the Union's alleged wrongdoing in this case, it does not tend to rebut the evidence offered by A & M Heating that Alex Mancone was essentially blacklisted from Union employment because there is no evidence that Alex Mancone ever reported that action to the FBI.

The Union brought an arbitration proceeding against Hudson Heating alleging that Hudson Heating owed benefits under the CBA and obtained a judgment for $30,496.39 plus $8,262.50 in attorney's fees on July 17, 2000. (Def. Letter Br. 2/23/04, Ex. 1.) On August 11, 2000, Hudson Heating filed a voluntary Chapter 7 bankruptcy petition. (Lois Mancone Decl., Ex. 2.) To date, the Union's judgment appears unsatisfied. (Def. Letter Br. 2/23/04.) Hudson Heating also incurred other substantial debts that were not discharged in the bankruptcy proceeding. (*Id.*)

On September 7, 2000, Alex Mancone formed A & M Heating for the purpose of obtaining non-union work; he is the sole shareholder of the corporation. (Alex Mancone Decl. ¶ 23.) Shortly after formation of the company, Alex hired his daughter to perform administrative tasks and entered into a lease for a shop located at 6 Adams Court, in Carmel, New York. (*Id.*) Lois Mancone is not involved in the management of A & M Heating. (*Id.*) A & M Heating operates in the same general geographic area that Hudson Heating did business in and, like Hudson Heating, is involved in the heating, air conditioning and ventilation industry. (Columbo Aff. ¶¶ 17–18.) A & M Heating has never worked on any project commenced by Hudson Heating and there is no evidence that A & M Heating serves any of Hudson Heating's customers. (Alex Mancone Decl. ¶ 23.) As discussed *supra,* in work-

ing for A & M Heating, Alex Mancone utilizes some of the metal forming equipment that he acquired in 1996 and used while working for Hudson Heating. A & M Heating also apparently makes use of two vans that were used by Hudson Heating.[4] Finally, although A & M Heating's attorney did some work for Hudson Heating, A & M Heating uses different accountants and insurers and has a business banking account with a different bank. (*Id.* ¶¶ 28–34.)

## DISCUSSION

### I. *Subject Matter Jurisdiction*

■ This case was originally brought before the National Labor Relations Board ("NLRB"), which has primary jurisdiction over questions of substantive federal labor law. *See Laborers Tr. Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 543 n. 4, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). The Union contends that we have jurisdiction because the Union seeks money damages for breach of contract pursuant to § 301 of the Labor Management Relations Act ("LMRA"). *See Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.,* 944 F.2d 1037, 1044 (2d Cir.1991) (remanding to the district court for a determination of whether the employer was obligated to arbitrate on an alter ego theory). "For a district court to entertain jurisdiction under section 301, there must be a claim of a violation of a contract between an employer and a labor organization, and the labor dispute must concern an 'industry affecting commerce' ...." *470 Stratford Holding Co. v. Local 32B–32J, Serv. Employees Int'l Union, AFL–CIO,* 805 F.Supp. 118, 121 (S.D.N.Y.1992). The NLRB proceeding was dismissed because A & M Heating had only one employee when the adminis-

---

4. Since these vehicles were not sold in the bankruptcy proceeding we presume that title to them was vested in Alex or Lois Mancone at the time of Hudson Heating's bankruptcy petition.

trative action was commenced. (Carey Decl. ¶ 3, Ex. 2.)[5] The Union's administrative appeal was denied. (*Id.,* Ex. 5.)

■■■ As a preliminary matter, we conclude that the Court has jurisdiction to make the successorship determination required to resolve the present controversy. However, our jurisdiction over this dispute is not as broad as the Union seems to suggest. (Complt.¶¶ 8–9.) The Supreme Court delineated the contours of this Court's jurisdiction under § 301 of the LMRA in *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 206–07, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). There the Court held that an employer could not be compelled to arbitrate a grievance that was filed in response to layoffs occurring after its collective bargaining agreement had expired. *Id.* at 209, 111 S.Ct. 2215. The Court stated that federal courts do not have jurisdiction under § 301 of the LMRA to enforce contractual terms against an employer after the expiration of a collective bargaining agreement if the dispute in question did not arise "under the contract." *Id.*

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205–06, 111 S.Ct. 2215. Therefore, while an employer may be compelled to arbitrate a grievance that involved a layoff that occurred while the collective bargaining agreement was in effect, the employer cannot be compelled to arbitrate a grievance that was filed in response to a layoff that occurred after the collective bargain-

ing agreement expired. The Court explained,

> [A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied. *Although after expiration most terms and conditions are not subject to unilateral change, in order to protect the statutory right to bargain, those terms and conditions no longer have force by virtue of the contract.*

*Id.* at 206, 111 S.Ct. 2215 (emphasis added). The Court then cited the Second Circuit's decision in *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 25–27 (2d Cir.1988) for the proposition that § 301 "of the LMRA ... does not provide for federal court jurisdiction where a bargaining agreement has expired, although rights and duties under the expired agreement 'retain legal significance because they define the *status quo*' for purposes of the prohibition on unilateral changes." *Litton,* 501 U.S. at 206, 111 S.Ct. 2215. The only authority for imposing terms upon an employer for disputes that did not arise under the contract is under the National Labor Relations Act ("NLRA"); the NLRB has exclusive jurisdiction to impose terms upon an employer after the collective bargaining agreement has expired under the NLRA. *See id.* at 207, 111 S.Ct. 2215; *Laborers Tr. Fund,* 484 U.S. at 543 n. 4, 545, 108 S.Ct. 830 (holding that ERISA did not provide jurisdiction for a district court to rule on whether an employer was obligated to pay benefits after the collective bargaining agreement expired and that only the NLRB had such jurisdiction).

The present action was brought under § 301 of the LMRA. The Complaint includes a claim for money damages for breach of Hudson Heating's CBA which, the Union asserts, applies to A & M Heat-

---

ing because A & M Heating is the alter ego of Hudson Heating. The most troubling allegations in the Complaint concern the Union's claim that the CBA at issue is still in effect and that A & M Heating continues to breach the agreement with each passing day despite the fact that the CBA has expired. (Complt.¶¶ 8–9.) By including these allegations, the Union appears to be attempting to resuscitate an expired collective bargaining agreement without proceeding through the NLRB. Section 301 does not allow this Court to impose postexpiration obligations upon employers. We can decide only whether a breach occurred prior to the expiration of Hudson Heating's CBA and whether A & M Heating should be held liable for that breach on an alter ego theory. Furthermore, if this Court were to conclude that the matter should be remitted to arbitration, we could compel arbitration only of disputes that arose "under the contract." If A & M Heating's postexpiration conduct establishes that it is the alter ego of Hudson Heating, it can be compelled to arbitrate the damages which should be assessed against it for breach of the CBA by Hudson Heating. It cannot be compelled to arbitrate whether A & M Heating was obligated to abide by the terms of the CBA after it expired or whether it should be required to bargain with the Union.

■ The Union intimates that if a company is found to be the alter ego of a company that signed a collective bargaining agreement and then filed under Chapter 7, a district court may enter an order obligating the alter ego entity to abide by the bankrupt company's collective bargaining agreement and award damages for failure to assume the agreement. (Pl. Letter Br. 2/12/04 citing *In re Goodman*, 873 F.2d 598 (2d Cir.1989) (*"Goodman II"*) over-

ruled on other grounds by *Germain v. Conn. Nat. Bank*, 926 F.2d 191, 194 (2d Cir.1991) and *RCR Sportswear, Inc.*, 312 N.L.R.B. 513, 1993 WL 391145 (1993) *enforced without opinion by* 37 F.3d 1488 (3d Cir.1994); Complt. ¶¶ 8–9.) The authority the Union cites on this point is inapposite.

In the NLRB proceeding that spawned *Goodman II*, the only Second Circuit decision cited by the Union on this point, the NLRB found that an employer was the alter ego of a signatory to a collective bargaining agreement and had violated § 8(a)(5) and § 8(a)(1) of the NLRA by failing to assume the obligations of the collective bargaining agreement. *E.G. Sprinkler Corp.*, 268 N.L.R.B. 1241, 1244, 1984 WL 36098 (1984) *enforced by Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10 (2d Cir.1984) (*"Goodman I"*). The NLRB ordered that the alter ego employer recognize and bargain with the union and "honor and implement all the terms" of the collective bargaining agreement the previous employer had with the union. *Goodman II*, 873 F.2d at 600. The NLRB also ordered the employer to remit benefit payments to the union and ordered back pay. *Id.*

Subsequently, the alter ego employer and Goodman, its sole shareholder, filed Chapter 7 petitions. *Id.* Goodman then formed a new company named Goodman Automatic Sprinkler Corp. ("GASC"). The NLRB instituted proceedings against Goodman and GASC seeking an order binding them to the 1984 NLRB order and requiring them to honor and implement the terms of the collective bargaining agreement. *Id.* at 600–01. Goodman and GASC filed a complaint in the bankruptcy court alleging that the union and the NLRB were violating Goodman's Chapter 7 discharge order. *Id.* at 601.[6]

---

6. The bankruptcy court held that GASC had standing to pursue its complaint in bankruptcy court. *NLRB v. Goodman*, 90 B.R. 56, 58

(W.D.N.Y.1988). The district court reversed this holding. *Id.* at 59. Accordingly, we will

The bankruptcy court held that Goodman's Chapter 7 trustee rejected the collective bargaining agreement under § 365(a) of the Bankruptcy Code (the "Code") because the trustee failed to assume the agreement as required by the Code. *Goodman,* 90 B.R. at 61; *In re Goodman,* 81 B.R. 786, 791 (Bank. W.D.N.Y.1988). The bankruptcy court also noted that because no claim for damages caused by the unilateral rejection of the collective bargaining agreement had been submitted in the bankruptcy proceeding, any entitlement to damages caused by that rejection had been lost. *See id.* at 792.

The district court affirmed the bankruptcy court's finding that Goodman's collective bargaining agreement was rejected in the Chapter 7 proceeding. *Goodman,* 90 B.R. at 61–62 (citing *NLRB v. Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), *superseded by statute as stated in Truck Drivers Local 807, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp., Inc.,* 816 F.2d 82, 88 (2d Cir.1987)). Goodman was entitled to reject the collective bargaining agreement in his Chapter 7 proceeding without bargaining. *Goodman,* 90 B.R. at 62. However, if his post-petition conduct made him an alter ego of the original employer, Goodman could be required to bargain with the union pursuant to § 8 of the NLRA after the agreement had been rejected and terms appearing in the rejected collective bargaining agreement could be imposed upon him by *operation of the NLRA. Id.* The district court also affirmed the bankruptcy court's holding that a party aggrieved by the unilateral rejection of a collective bargaining agreement must file a claim in the bankruptcy proceeding or that claim is lost. *Id.* The district court then remanded the case to the bankruptcy court for a determination of whether Good-

man and GASC were alter egos and therefore liable for the original employer's obligations under the NLRA. *Id.* at 60, 64.

The Second Circuit affirmed the district court's findings on the effect of Goodman's Chapter 7 petition on the collective bargaining agreement and his duty to bargain with the union. *Goodman II,* 873 F.2d at 604. It reversed the district court's remand of the alter ego issue because "neither the Bankruptcy Court nor the District Court [had] jurisdiction to determine the successorship issue." *Id.* at 604. The court reasoned that the district court and the bankruptcy court had jurisdiction over the NLRA issues presented only to the extent necessary to determine the scope of the discharge order. Once the district court determined that, if Goodman or GASC were alter egos of the original employer, they would be subject to liability under the NLRA despite the discharge order, the scope of the discharge had been decided. Therefore, the district court and the bankruptcy court no longer had collateral jurisdiction because they had resolved all the issues necessary to determine the merits of the action. *Id.* at 603. Therefore, *Goodman II* is authority for the following propositions: (1) although federal courts have collateral jurisdiction to decide issues concerning substantive federal labor law when the suit is brought under an independent federal remedy, that jurisdiction terminates when the court decides the issues relevant to the independent federal remedy; and (2) after a collective bargaining agreement has been rejected in bankruptcy, any duty to bargain with the union or implement terms of that agreement arises solely under the NLRA and is within the exclusive jurisdiction of the NLRB. The case does not establish that an alter ego entity is automatically required to bargain with the union or to honor the terms

only discuss the bankruptcy court's decision as it related to Goodman.

of an expired collective bargaining agreement.[7] We have jurisdiction only to decide whether A & M Heating should be held liable under an alter ego theory for Hudson Heating's breach of the CBA. Once we do that, our jurisdiction under § 301 of the LMRA is exhausted. We may not determine whether Hudson Heating's expired CBA should be binding on A & M Heating because that question is within the exclusive jurisdiction of the NLRB.

Hudson Heating's CBA expired by its own terms on April 30, 2002. Indeed, the CBA was effectively terminated much earlier because collective bargaining agreements are automatically rejected in Chapter 7 proceedings unless the Chapter 7 trustee assumes the agreement. *Goodman*, 90 B.R. at 61–62 (affirming the bankruptcy court's holding that collective bargaining agreements are rejected if not assumed in Chapter 7 proceedings). The Union contends that Hudson Heating's Chapter 7 filing has "no effect on the contract or [the arbitration] clause." (Pl. Letter Br. 2/12/04.) Counsel states that "[s]ince the Chapter 7 proceeding did not of itself eliminate Hudson or actually discharge Hudson, there is no reason to assume that Hudson's collective bargaining agreement was altered in any respect." *Id.* This argument completely ignores § 365(a) of the Code, which applies equally to individuals and corporations. That section provides "the trustee, subject to the court's approval, may assume or reject *any* executory contract . . . ." 11 U.S.C. § 365(a) (emphasis added). As previously discussed, this provision has been interpreted to allow a trustee or debtor in possession to reject a corporation's collective bargaining agreement. *See Bildisco,*

465 U.S. at 526, 104 S.Ct. 1188 (holding that a debtor in possession could reject a collective bargaining agreement); *In re Rufener Constr., Inc.,* 53 F.3d 1064, 1066–67 (9th Cir.1995) (holding that a Chapter 7 trustee may unilaterally reject a collective bargaining agreement without adhering to the dictates of § 1113 of the Code); *In re Family Snacks Inc.,* 249 B.R. 915, 920 (Bankr.W.D.Mo.2000) (noting that collective bargaining agreements can be unilaterally rejected in Chapter 7 proceedings); *In re Moline Corp.,* 144 B.R. 75, 79 (Bankr.N.D.Ill.1992) (noting the same); *see also* 11 U.S.C. 103(f) (the provisions of subchapter I of Chapter 11 of the Code, which includes § 1113, applies only to cases filed under Chapter 11); *cf. Shopmen's Local Union No. 455., Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers, AFL–CIO v. Kevin Steel Prods., Inc.,* 519 F.2d 698, 703–04 (2d Cir. 1975) (noting that collective bargaining agreements are "frequently and perfunctorily rejected" in "straight" bankruptcy proceedings). Indeed, in Chapter 7 proceedings a collective bargaining agreement is automatically rejected if not assumed within sixty days after the order for relief. *See* 11 U.S.C. § 365(f); *Moline Corp.,* 144 B.R. at 79 ("It is worth noting that if a collective bargaining agreement is not assumed by a Chapter 7 trustee within sixty days after the order for relief, it is automatically rejected."). The rejection relates back to the date of the bankruptcy petition. 11 U.S.C. § 365(g)(1).

 In light of the above discussion we conclude that, once the collective bargaining agreement is terminated, either by expiration under its own terms or by rejec-

---

7. The Union's reliance on *RCR Sportswear* is similarly misplaced because in that case the NLRB ordered an alter ego employer to abide by a collective bargaining agreement. 312 N.L.R.B. at 514–15. *NLRB v. Better Bldg.*

*Supply Corp.,* 837 F.2d 377, 378 (9th Cir. 1988) is also inapposite because it merely establishes that corporate debt is not discharged in bankruptcy, a point defendant concedes.

tion in a Chapter 7 proceeding, no duty to bargain can exist independent of the NLRA because the contract is no longer in existence. If the Union wishes to impose upon an alter ego terms contained in an expired or rejected collective bargaining agreement it can do so only by filing a complaint with the NLRB. The Union may pursue an independent federal remedy under § 301 of the LMRA, but the district court has jurisdiction only to determine whether the employer should be held liable on an alter ego theory for any breach of the collective bargaining agreement that occurred prior to its termination. Furthermore, an alter ego employer may be bound by an arbitration clause in its predecessor's collective bargaining agreement only when the dispute arises "under the contract." A dispute over whether the alter ego failed to abide by the terms of the collective bargaining agreement after the agreement expired or was rejected in a Chapter 7 proceeding does not arise "under the contract."

A review of the NLRB proceedings that have already taken place in this matter reinforces our conclusion. The Union filed an NLRB complaint alleging that A & M Heating had violated § 8 of the NLRA. (Carey Decl., Ex. 2.) The NLRB investigated the complaint but refused to take further action. (*Id.*) The Union's appeal was denied because the NLRB Office of Appeals concluded that even if A & M Heating was the alter ego of Hudson Heating, "[t]he allegations that the bargaining unit may have increased to two part-time employees ... does not obligate A & M to recognize and bargain with the Union." (Carey Decl., Ex. 5.) If we were to consider whether the terms of Hudson Heating's CBA could be applied to A & M Heating after the expiration of the CBA, we would allow the Union to circumvent the NLRB appeal process. If we ultimately ruled in favor of the Union, we would be reversing the NLRB's determination that A & M

Heating is not obligated to recognize or bargain with the Union. Finally, in support of our conclusion, we point to the Union's failure to cite a single case where a union was allowed to bring suit under § 301 of the LMRA to revive a collective bargaining agreement that had expired or was rejected in bankruptcy or where the union was allowed damages in such an action for failure to adhere to the collective bargaining agreement after its termination. Counsel's failure to present such authority is a further indication that federal courts lack jurisdiction to grant such relief. We now turn to the Union's motion and the defendant's jurisdictional objection.

## II. The Alter Ego Determination is a "Question of Arbitrability" for This Court to Decide

In the *Steelworkers Trilogy* the Supreme Court enumerated the following basic principles to be considered when deciding whether to order arbitration in the labor context: (1) " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); (2) "whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance ... is undeniably an issue for judicial interpretation." *AT & T Techs.*, 475 U.S. at 649, 106 S.Ct. 1415; (3) "in deciding whether the parties agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims," *id.;* and (4) "where the contract contains an arbitration clause, there is a presumption of arbitrability ...." *Id.* at 650; *Maryland*

*Cas. Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 982 (2d Cir.1997). Defendant contends that it cannot be compelled to arbitrate because it never entered into an agreement to arbitrate with the Union. Thus, the issue most pertinent to this motion is whether the parties agreed to arbitrate.

■ Unless the parties clearly provide otherwise, whether there is an agreement to arbitrate is to be determined by the court considering a motion to compel arbitration. *PaineWebber v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996). In the present case, the Union contends that A & M Heating is the alter ego of Hudson Heating and thus is bound by the arbitration clause in Hudson Heating's CBA. (Pl. Mem. Supp. Mot. Compel at 1–3, 7–10.) The Union argues that we should compel arbitration without first deciding whether A & M Heating is the alter ego of Hudson Heating because the Supreme Court's ruling in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) establishes that if a party *alleges* that its adversary is bound by an arbitration agreement because it is the alter ego of an entity that signed such an agreement, the alter ego determination is for an arbitrator, not the court. (Pl. Mem. Supp. Mot. Compel at 4, 7.) The Union's reading of *Howsam* is so tortured that its argument borders on frivolous. In *Howsam,* the Court enforced an arbitration clause contained in a written agreement entered into between the plaintiff and the defendant despite a National Association of Securities Dealers ("NASD") rule that such arbitration proceedings must be brought within six years of the event giving rise to the dispute. 537 U.S. at 85–86, 123 S.Ct. 588. The Court reasoned that when an agreement to arbitrate exists, whether an applicable time limitation bars suit is a "gateway" question to be decided by the arbitrator, not the court. *Id.* at 85, 123 S.Ct. 588. However, more relevant to the present point, the Court noted that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84, 123 S.Ct. 588 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943–46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

■ Whether A & M Heating is Hudson Heating's alter ego and therefore bound by the arbitration clause contained in Hudson Heating's CBA is exactly the type of "gateway" issue that is a "question of arbitrability" for this Court to decide. *See Truck Drivers Local Union No. 807,* 944 F.2d at 1047 (reversing the district court's denial of a motion to compel arbitration and remanding for a determination of whether the party resisting arbitration was the alter ego of a company that was a signatory to a collective bargaining agreement and should therefore be compelled to arbitrate); *Vittoria Corporation v. N.Y. Hotel & Motel Trades Council, AFL–CIO,* 30 F.Supp.2d 431, 436 (S.D.N.Y.1998) ("It is the role of the court to decide if the company being compelled to arbitrate is an alter ego or joint employer of a signatory to the collective bargaining agreement.") (citations omitted); *see also Carpenters 46 N. Cal. Conference Bd. v. Zcon Builders,* 96 F.3d 410, 415 (9th Cir.1996) (holding that it was error for the district court to defer to an arbitrator's decision that a non-signatory to a collective bargaining agreement was bound to arbitrate because the alter ego determination was for the district court, not the arbitrator). Thus, the Union's argument is not supported but undermined by *Howsam* which clearly teaches that if the existence or binding effect of an agreement to arbitrate is in question, this is an issue to be decided by the court, not by an arbitrator.

Similarly, the Union contends that *Eichleay Corp. v. Int'l Ass'n of Iron Work-*

*ers,* 944 F.2d 1047 (3d Cir.1991) stands for the proposition that an arbitrator should decide whether a non-signatory to a collective bargaining agreement can be bound as an alter ego by an arbitration clause in that agreement. (Pl. Mem. Supp. Mot. Compel at 3; Pl. Reply Mem. Supp. Mot. Compel at 3.) In *Eichleay,* the Union commenced an arbitration proceeding against an employer with whom it had signed a collective bargaining agreement. 944 F.2d at 1059. In that proceeding, the arbitration panel found that the signatory had created a non-unionized subsidiary in violation of the collective bargaining agreement and that the subsidiary was the alter ego of the signatory employer. *Id.* The Third Circuit held that the panel's alter ego finding should have been enforced by the district court because it was not irrational. *Id.* at 1060. However, the court acknowledged that an arbitrator may decide the alter ego issue only in a proceeding against a signatory employer and in that proceeding the union may seek damages only against the signatory employer, not the non-signatory alter ego. *Id.* at 1059 n. 12. The court emphasized that when a district court is asked to compel a non-signatory to arbitrate on the theory that the non-signatory is an alter ego of an employer that signed a collective bargaining agreement, the alter ego issue is to be decided by the court, not an arbitrator. *Id.* ("[A] nonsignatory cannot be bound to a collective bargaining agreement under an alter ego theory unless the district court has, as a condition precedent, made the alter ego determination.") (citing *Laborers Int'l Union of N. Am. v. Foster Wheeler Corp.,* 868 F.2d 573 (3d Cir.1989)). Therefore, *Eichleay* lends no support whatever to the Union's argument and, in fact, directly opposes the Union's effort to bind A & M Heating, a non-signatory, to Hudson Heating's CBA.

The Union's contention that a party who concededly did not agree to arbitrate should be forced to appear in an arbitral forum merely because its adversary *alleges* that the party is an alter ego of an entity that agreed to arbitrate flies in the face of the firmly established rule that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Maryland Cas. Co.,* 107 F.3d at 982 (quoting *AT & T Techs.,* 475 U.S. at 648, 106 S.Ct. 1415). Accordingly, we conclude that the alter ego issue is a "question of arbitrability" for this Court to decide and we will therefore now address the Union's alternative argument that the record demonstrates that A & M Heating is the alter ego of Hudson Heating. (Pl. Mem. Supp. Mot. Compel at 1–3, 7–10.)

### III. *Governing Standard*

The Union's motion is before the Court in an unusual procedural posture. Normally, when there is a claim for breach of a collective bargaining agreement that contains an arbitration clause, the party seeking arbitration brings an action under § 301 of the LMRA to compel arbitration. *See, e.g., Local 74, Serv. Employees Int'l Union, AFL–CIO v. Ecclesiastical Maint. Servs., Inc.,* 55 F.3d 105, 107 (2d Cir.1995); *Truck Drivers Local Union No. 807,* 944 F.2d at 1039; *Associated Brick Mason Contractors, Inc. v. Harrington,* 820 F.2d 31, 34 (2d Cir.1987). Then that party files a motion for summary judgment ordering the parties to arbitration. *See, e.g., Truck Drivers Local Union No. 807,* 944 F.2d at 1040. Here, however, the Union has filed a Complaint seeking money damages for the alleged breach of Hudson Heating's CBA and, after the Answer was filed, moved to compel arbitration. The Union apparently employed this strategy to avoid the six-month statute of limitations that the Second Circuit applies to actions to

compel arbitration under the LMRA. *Harrington*, 820 F.2d at 37.[8]

Although it is labeled a motion to compel arbitration, the Union's motion is tantamount to a motion for partial summary judgment because the Union has effectively moved for the ultimate relief it seeks in this lawsuit. *See Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 354 (2d Cir. 1995) (affirming the district court's entry of summary judgment for a party that filed a motion to compel arbitration in response to its adversary's motion for a stay of arbitration); *Teamster Auto. Employees Local Union No. 665 v. Ampco Parking*, No. 93 Civ. 4577, 1994 WL 72209, at *1, 1994 U.S. Dist. LEXIS 2545, at *1 (N.D.Cal. Feb. 28, 1994) (treating a motion to compel arbitration filed in connection with a suit to compel arbitration under § 301 of the LMRA as a motion for summary judgment because the plaintiff had moved for the ultimate relief sought); *see also Trap Rock Indus.*, 982 F.2d at 887 (noting that granting a motion to compel arbitration "is tantamount to an order granting a cross-motion for summary judgment."). Even if we viewed the Union's action as an ordinary breach of contract

suit under the LMRA, the Union asks the Court to hold that A & M Heating should be compelled to arbitrate because it is the alter ego of Hudson Heating. (Pl. Mem. Supp. Mot. Compel at 1–3, 7–10.) If the Union succeeded and we held that A & M Heating was the alter ego of Hudson Heating, there would be nothing to decide with respect to the breach of contract claim except damages, because the liability of Hudson Heating has already been established by the judgment against it.

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is

8. If we were not deciding this motion on other grounds, we would be inclined to hold that the Union's efforts to arbitrate this dispute are time-barred because *Harrington* establishes that suits to compel arbitration under § 301 of the LMRA must be brought within six months of the refusal to arbitrate. 820 F.2d at 37. The Second Circuit applied the six-month statute of limitations because "six years is simply too long to allow industrial disputes to fester." *Id.* The court also held that whether the suit was time barred was an issue for the court, not an arbitrator. *Id.* If we allowed the Union to circumvent the limitations period by employing this procedural tactic, we would be violating the spirit of the Second Circuit's decision in *Harrington*. The refusal to arbitrate in this case occurred, at the latest, when the Union filed its NLRB charge on November 27, 2000. (Carey Decl., Ex. 1.) Thus, the time for filing a motion to

compel arbitration expired on May 27, 2001, two years before this action was filed and twenty-nine months before filing of the motion to compel.

We also note that this entire action may be time barred. Although there is authority for the proposition that the state's six-year statute of limitations applies in "ordinary breach-of-contract" actions brought under § 301 of the LMRA, the shorter six-month statute of limitations applies when the plaintiff's action is more analogous to a claim under the NLRA. *See DelCostello v. Int'l Bhd. of Teamsters et al.*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying six-month statute of limitations found in § 10(b) of the NLRA to suit brought under § 301 of the LMRA where employee alleged breach of contract claims against the employer and breach of duty of fair representation against the union).

appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

■ When one party has moved for summary judgment, the Court may grant summary judgment in favor of the nonmoving party "provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir.1999). Notice is not required because when one party has moved for summary judgment the "parties are then on notice that ultimate issues are before the court." *Id.* Indeed, "it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment." *Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Am. v. Mason Tenders Dist. Council of Greater N.Y.*, 291 F.2d 496, 505 (2d Cir.1961). However, if the grant of summary judgment would procedurally prejudice the moving party it should not be granted.

A party is procedurally prejudiced *if it is* surprised by the district court's action and that surprise results in that party's failure to present evidence in support of its position.... If, however, the party either cannot claim to have been surprised by the district court's action or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by lack of notice. *"The threat of procedural prejudice is greatly diminished if the court's sua sponte determination is based on issues raised by the moving party."*

*Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139–40 (2d Cir.2000) (quoting *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (emphasis added)).

### IV. Alter Ego Doctrine

■ "The alter ego doctrine provides an analytical hook to bind a nonsignatory to a collective bargaining agreement." *Truck Drivers Local Union No. 807*, 944 F.2d at 1046 (citations omitted). "[T]he focus of 'the alter ego doctrine ... is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.'" *Id.* (quoting *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 507–08 (5th Cir.1982)). When considering whether a party is the alter ego of a signatory to a collective bargaining agreement, the court weighs a number of different factors, no single one of which is dispositive, "including whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership, and whether the decision to change companies was motivated by anti-union sentiment." *A & P Brush Mfg. Corp. v. NLRB*, 140 F.3d 216, 219 (2d Cir.1998) (citations omitted). Although the absence of anti-union animus weighs against a finding that a party is an alter ego, if there is substantial evidence demonstrating that the other factors are present, lack of anti-union animus will not

defeat an alter ego finding. *Goodman I,* 741 F.2d at 11–12; *see also Stardyne, Inc. v. NLRB,* 41 F.3d 141, 152 (3d Cir.1994) ("The lack of intent to evade obligations under the Act, weighs against a finding of alter ego status.").

### A. *Management and Control*

The record demonstrates that Hudson Heating and A & M Heating do not share substantially identical management. The Union does not dispute that Lois Mancone negotiated and signed the CBA with the Union. While the Union claims that Lois Mancone never placed calls to the Union to request workers, this fact, if true, would be of little relevance; someone else could have placed calls to the Union and we would still conclude that Lois Mancone was in charge of the company's labor relations because she negotiated the company's CBA, had contact[9] with Union officials and hired workers. The undisputed evidence also tends to show that Lois Mancone had significant control over the day-to-day management of Hudson Heating: she authorized all expenditures, attended all contract negotiations and collected all accounts receivable.

There is no evidence in the record to suggest Alex Mancone had any management responsibilities in his role as foreman with Hudson Heating. As noted *supra* note 2, the Union offers only Columbo's claim that Lois Mancone told him that "she had nothing to do with the business," (Columbo Aff. ¶ 11), and that Alex Mancone ran the company. (*Id.* ¶¶ 12–13.) These statements are out-of-Court statements offered in this Court for the truth of their contents and are therefore hearsay. *See* FED. R. EVID. 801(c). Furthermore, they do not fall within the admission exception to the rule against hearsay because

Lois Mancone is neither a party to this action nor an officer or agent of a party. *See S. Ala. Pigs, LLC v. Farmer Feeders, Inc.,* 305 F.Supp.2d 1252, 1258–59 (M.D.Ala.2004) (holding that a letter from an alleged agent was inadmissible hearsay because there was no independent evidence to suggest that the author of the letter was the agent of the party seeking to avoid a finding of alter ego status). We therefore decline to consider these statements. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997) ("only admissible evidence need be considered by the trial court on a motion for summary judgment."); *McBride v. St. Anthony Messenger Magazine,* No. 02 Civ. 0237, 2003 WL 1903381, at *8 (S.D.Ind. Feb. 6, 2003) (holding that hearsay was inadmissible on a motion to compel arbitration). The undisputed evidence tends to show that Lois Mancone actually controlled Hudson Heating and there is no evidence to suggest Alex Mancone was involved in the management of that company. The Union does not dispute that Lois Mancone has no involvement in the management of A & M Heating or that Alex Mancone is solely in charge of its management. Accordingly, defendant has offered evidence tending to show that A & M Heating and Hudson Heating did not have substantially identical management. Having offered no admissible evidence tending to rebut defendant's evidence, the Union has failed to demonstrate that there is a genuine issue of material fact on this point. This weighs strongly against a finding of alter ego status.

### B. *Business Purpose*

Although the Union has not offered any detailed evidence, defendant does not dis-

---

9. Even by the Union's account, Lois Mancone communicated with Union officials on multi-

ple occasions.

pute the Union's contention that A & M Heating shares the same business purpose as Hudson Heating and operates in the same geographic area. This factor weighs in favor of finding A & M Heating is the alter ego of Hudson Heating.

### C. *Equipment*

The record also demonstrates that A & M Heating uses some of the same equipment Hudson Heating used when it was in operation. However, the evidence indicates that Alex Mancone personally holds title to some if not all of this equipment. Thus, the fact that A & M Heating utilizes some of the same equipment used by Hudson Heating carries very little weight in determining the alter ego issue.

### D. *Operations*

The Union does not dispute that A & M Heating operates out of facilities in Carmel while Hudson Heating operated out of a shop in Brewster. The Union also does not dispute that Alex Mancone is the only employee common to both A & M Heating and Hudson Heating and the record demonstrates that his role with A & M Heating is decidedly different from his role with Hudson Heating. Therefore, defendant has offered evidence tending to show that A & M Heating and Hudson Heating do not share an identity of operations and the Union has failed to rebut this evidence. This fact weighs against a finding of alter ego status.

### E. *Customers*

There is no evidence that A & M Heating serves the same customers as Hudson Heating and defendant has established that A & M Heating never worked on a project with which Hudson Heating was involved, two factors that weigh against an alter ego finding. *See Polis Wallcovering Inc.,* 323 N.L.R.B. 873, 877–78, 1997 WL 303679 (1997).

### F. *Supervision*

The record demonstrates that Alex Mancone supervised workers in his position as foreman with Hudson Heating and currently supervises workers in his capacity as owner of A & M Heating. This weighs in favor of the Union's position.

### G. *Common Ownership*

In its attempt to establish that A & M Heating and Hudson Heating are alter egos, the Union relies heavily on the fact that Lois Mancone, the sole shareholder of Hudson Heating, is married to Alex Mancone, the sole shareholder of A & M Heating. While the Court may infer common ownership when there is a close familial relationship between the owner of the non-signatory company and the owner of the signatory company, courts look behind the corporate form and presume common ownership only when there has been a strong showing of common control. *See In re Armen Digital Graphics, Ltd.,* No. 96 Civ. 5844, 1997 WL 458738, at *7–*9, 1997 U.S. Dist. LEXIS 11938, at *23–*29 (S.D.N.Y. Aug. 8, 1997) (holding that the presumption of common ownership does not arise where the party alleging alter ego status fails to demonstrate that both entities were controlled by the same family member and that the two entities shared substantially identical customers, operations, supervision and business purposes). "Were courts to assume alter ego status merely from the closely held ownership of the two companies by members of the immediate family, families would be effectively precluded from organizing their business affairs in any but a single corporate entity." *Id.* at *7 n. 9, 1997 U.S. Dist. LEXIS 11938, at *24 n. 9. In the present case, the Union has offered no admissible evidence tending to show that Alex Mancone actually controlled Hudson Heating or that Lois Mancone was a mere figure-

head in that company. Therefore, we have no reason to look through the nominally separate ownership of A & M Heating and Hudson Heating and assume the two companies are effectively the same company under different names. Thus, this factor weighs against a finding of alter ego status.

## H. *Anti–Union Animus*

Finally, the record demonstrates that A & M Heating was not created to evade Hudson Heating's responsibilities under the CBA. Quite to the contrary, the record shows that the Union effectively forced Hudson Heating out of business by blacklisting Alex Mancone, leaving him no alternatives except to seek non-union work or to find employment in a different field. *See Polis Wallcovering,* 323 N.L.R.B. at 877 ("The Board has specifically found that the creation of an enterprise for the purpose of obtaining nonunion work does not establish an unlawful motive."). The Union offers Alex Mancone's statement, as reported by Columbo, that "Hudson's problems were caused by Local 38." (Columbo Aff. ¶ 6.) This is not evidence of anti-union animus. In fact, it is entirely consistent with defendant's contention that Hudson Heating was ruined because the Union ordered its workers off of Hudson Heating's job site and refused to refer other workers to it. Indeed, the undisputed evidence tends to show that Alex Mancone wanted to remain affiliated with the Union even after it destroyed Hudson Heating, but Columbo thwarted his attempt to do so. Therefore, A & M Heating was formed for the legitimate business reason of economic survival; this weighs against an alter ego finding. *See Gilroy Sheet Metal, Inc.,* 280 N.L.R.B. 1075, 1078, 1986 WL 53939 (1986) (holding that an entity owned by the husband was not the alter ego of a collective bargaining agreement signatory company owned by the wife because the new entity was established for a legitimate business purpose and not to evade responsibilities under the NLRA). Furthermore, the fact that Hudson Heating filed for bankruptcy because it faced significant debts and not merely to reject the collective bargaining agreement also weighs against a finding of anti-union animus. *See Polis Wallcovering,* 323 N.L.R.B. at 880 (holding that the fact that the signatory's financial difficulties led to its bankruptcy filing weighed against a finding of alter ego status).[10]

## I. *A & M Heating is Not the Alter Ego of Hudson Heating*

With respect to the aforementioned factors, A & M Heating has offered evidence tending to show that A & M Heating is not the alter ego of Hudson Heating and the Union has failed to offer evidence sufficient to raise a genuine issue of material fact on this issue. The undisputed evidence shows that A & M Heating and Hudson Heating were owned, managed and controlled by different individuals and that A & M Heating never worked on any project with which Hudson Heating was affiliated. Furthermore, the undisputed evidence demonstrates that A & M Heating was not formed out of anti-union animus. The Union has suggested no combination of other facts which, even if proven, would lead us to conclude that A & M Heating is the alter ego of Hudson Heating. *See Armen Digital,* 1997 WL 458738, at *7–*9, 1997 U.S. Dist. LEXIS 11938, *22–*30. We therefore conclude that there is no genuine of issue of material fact and that as a matter of law judgment should be rendered in favor of defendant.

---

**10.** If we were to find that A & M Heating is the alter ego of Hudson Heating it would no doubt result in another bankruptcy petition as A & M Heating would, as a result, become liable for all of Hudson Heating's debts. We cannot imagine how the Union's position would be improved by this result.

We are confident, in light of the parties' extensive communications with the Court, that both litigants envisioned that they were submitting this dispute for a summary determination and that, after consideration of their evidence and arguments to the Court, we would either compel the defendant to arbitrate or dismiss the Union's action. Thus, the Union has no basis for contending that it has been procedurally prejudiced by entry of judgment in favor of A & M Heating.

We find support in the Second Circuit's decision in *Bridgeway*.[11] In that case the plaintiff sought to enforce a judgment it obtained in a Liberian court. 201 F.3d at 138–39. The plaintiff moved for summary judgment on the ground that the defendant should be estopped from "questioning the fairness of the Liberian judiciary." *Id.* at 139. The district court denied the plaintiffs motion and *sua sponte* entered summary judgment in favor of defendant because "Liberia's courts did not constitute 'a system of jurisprudence likely to secure an impartial administration of justice'" and thus the judgment was unenforceable as a matter of law. *Id.* (quoting *Bridgeway Corp. v. Citibank*, 45 F.Supp.2d 276, 287 (S.D.N.Y.1999)). The Second Circuit affirmed the district court's *sua sponte* grant of summary judgment, ruling that the plaintiff was not procedurally prejudiced because it argued in its Memorandum of Law that the Liberian court judgment should be honored and defendant refuted this assertion in opposition to the motion. *Bridgeway*, 201 F.3d at 140. Moreover, the plaintiff repeatedly stated that its evidence supported its position and there was no indication that the plaintiff could present more evidence if it were given the opportunity. *Id.*

In the present case the Union argued that we should compel A & M Heating to arbitrate on an alter ego theory.[12] The Union presented evidence on the alter ego issue and extensively discussed that evidence in its Memorandum of Law. The Union was given the opportunity to introduce more evidence upon submission of its Reply Memorandum of Law. In opposition to the Union's motion, defendant offered substantial evidence concerning the alter ego issue and argued that A & M Heating was not the alter ego of Hudson Heating. In its Supplemental Memorandum of Law, defendant argued that "there is only one issue to be decided in this motion and that is whether A & M Heating [is] the alter ego of Hudson Heating. If this court finds that A & M Heating is not the alter ego of Hudson Heating this court should dismiss the complaint...." (Def. Letter Br. 2/23/04.) The Union was given the opportunity to present more evidence when the Court requested additional briefing from the parties but declined to do so despite the fact that defendant took the opportunity to present more evidence on this second round of briefing and raised a jurisdictional objection in its Supplemental Memorandum of Law.[13] There is no indication that

---

**11.** 201 F.3d 134; *see also Coach Leatherware*, 933 F.2d at 167 (affirming grant of summary judgment *sua sponte* where the district court held that the defendant violated the Lanham Act by copying the plaintiff's tags); *Orix Credit Alliance, Inc. v. Horten*, 965 F.Supp. 481, 487 (S.D.N.Y.1997) (granting summary judgment to non-moving party because suit was time barred).

**12.** Although the Union included in its moving papers a frivolous argument in that an arbitrator, not the Court, should decide the alter ego issue, the Union clearly took the alternative position that we should compel A & M Heating to arbitrate because it was bound by Hudson Heating's CBA on an alter ego theory. (Pl. Mem. Supp. Mot. Compel at 1–3, 7–10.)

**13.** The fact that the Court requested additional briefing regarding the effect of Hudson Heating's Chapter 7 petition also should have put the Union on notice that the Court was

the Union could have presented any more evidence than it did. Indeed, since November 2000, the Union has argued its case before the NLRB twice and has filed four briefs before this Court arguing the alter ego issue. The Union has had ample opportunity to shepherd the evidence in support of its position and it had every motive to proffer all the evidence it had to support the motion it placed before this Court. Furthermore, this Court has done nothing to interfere with the Union's right to conduct whatever discovery it felt was appropriate. Therefore, like the plaintiff in *Bridgeway,* the Union is not procedurally prejudiced by our entry of judgment for defendant.

The fact that the Union labeled its motion a motion to compel rather than a motion for partial summary judgment does not require a different result. The Second Circuit's decision in *Oppenheimer* is illustrative on this point. In that case the plaintiff filed an action to stay arbitration and a motion for stay of the arbitration proceedings. The defendants cross moved to compel arbitration. 56 F.3d at 354–55. On its motion for a stay, the plaintiff argued that the defendants were not "customers" of the plaintiff within the meaning of the arbitration agreement and thus plaintiff was not bound to arbitrate. *Id.* at 357. The defendants offered evidence that tended to show that they were customers. Although the plaintiff "repeatedly offered general denials of [defendants'] contentions, it offered no evidence casting doubt

on the accuracy of [defendants'] evidence . . . ." *Id.* The district court denied the motion for a stay, granted the motion to compel arbitration and entered judgment in favor of defendants which resulted in dismissal of the action. *Id.* at 355. The Second Circuit affirmed and by doing so recognized that in certain procedural postures a motion to compel arbitration is equivalent to a motion for summary judgment. *Id.* at 359. If we were to treat the Union's motion as anything but a motion for summary judgment, we would "exalt form over substance in a way that the adoption of the Federal Rules of Civil Procedure rendered obsolete." *A.L. Eastmond & Sons, Ltd. v. Hoey,* No. 01 Civ. 3576, 2001 WL 1329203, at \*1, 2001 U.S. Dist. LEXIS 17472, \*3 (S.D.N.Y. Oct. 30, 2001).[14]

### 1. *The Effect of Our Alter Ego Finding on Jurisdiction*

Finally, even if we concluded that summary judgment could not be entered in favor of defendant on plaintiff's motion to compel arbitration without procedural prejudice to the Union, we would still hold that A & M Heating is not the alter ego of Hudson Heating and dismiss the Union's Complaint, with prejudice, pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Federal district courts have jurisdiction under § 301 of the LMRA only to entertain "[s]uits for violations of contracts . . . ." 29 U.S.C. § 185(a); *Textron Lycom-*

---

making a summary determination of whether the agreement to arbitrate was binding on defendant.

**14.** In *Oppenheimer* the Second Circuit found that plaintiff could not claim that it was unfairly surprised by a *sua sponte* grant of judgment in favor of the defendant. Although the parties hadn't filed motions for summary judgment, the fact that both parties sought a summary determination on the same issue weighed heavily against finding unfair sur-

prise, 56 F.3d at 358. In the present case the Union was clearly seeking a summary determination on the alter ego issue and the defendant asked this Court to dismiss plaintiff's action because A & M Heating is not the alter ego of Hudson Heating. Therefore, both parties sought a summary determination on the same dispositive issue and this part of the holding in *Oppenheimer* provides further support for an entry of summary judgment in this case.

*ing Reciprocating Engine, Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union,* 523 U.S. 653, 656, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998). Defendant argues that if we conclude that A & M Heating is not the alter ego of Hudson Heating, we lack subject matter jurisdiction under the LMRA because the existence of a contract is tied to the alter ego determination. (Def. Mem Opp. Mot. Compel at 11–12; Def. Letter Br. 2/23/04.) Defendant's position is supported by *Armen Digital.* In that case the employer filed an action in state court for a stay of arbitration. 1997 WL 458738, at *1, 1997 U.S. Dist. LEXIS 11938 at *5. The union removed the action to federal court, claiming jurisdiction under § 301 of the LMRA. *Id.* After the parties submitted evidence on the issue, the court found that although the two employers at issue shared "administrative expenses and staff, and their principals ... engaged in some transactions that [could] not be fairly described as 'arms-length,' they [were] not alter egos." *Id.* at *7, 1997 U.S. Dist. LEXIS 11938 at *23. The court thus concluded that there was no collective bargaining agreement binding on the employer and no basis for suit under the LMRA. The court therefore remanded the action to the state court. *Id.* at *9, 1997 U.S. Dist. LEXIS 11938 at *30.[15]

"Whenever it appears by suggestion or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Fox,* 42 F.3d at 140. The party bringing the action has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Gilman v. BHC Sec.,* 104 F.3d 1418, 1421 (2d Cir.1997). When the question of subject matter jurisdiction turns on a factual issue, the court may weigh the evidence offered by the parties and no presumption of truthfulness applies. *See Celestine v. Mount Vernon Neighborhood Health Ctr.,* 289 F.Supp.2d 392, 400 (S.D.N.Y.2003).

■■■ The Union has had ample opportunity to present evidence that A & M Heating is the alter ego of Hudson Heating and it failed to do so. Therefore, there is no collective bargaining agreement binding on A & M Heating and no jurisdiction of this action under § 301 of the LMRA so that the Union's action would have to be dismissed on this alternate ground in any event. *See Armen Digital,* 1997 WL 458738, at *9, 1997 U.S. Dist. LEXIS 11938, at *30.

## CONCLUSION

For the reasons stated herein, plaintiff Local Union Number 38, Sheet Metal Workers' International Association, AFL–CIO's motion to compel arbitration is denied and summary judgment is entered in favor of defendant A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc. Accordingly, plaintiff's Complaint is dismissed in its entirety with prejudice.

SO ORDERED.

**15.** *Armen Digital* does not stand for the proposition that we cannot enter a judgment for the defendant upon finding that the defendant is not the alter ego of a signatory to a collective bargaining agreement. The Supreme Court has noted that when a defendant in a suit brought under § 301 raises a defense based on the validity of the contract and succeeds on that defense, judgment may be entered in favor of the defendant. *See Textron,* 523 U.S. at 658, 118 S.Ct. 1626.